STRINE, Chief Justice,
for the majority:
Dana Fuller appeals a Family Court decision denying her petition for expungement of her juvenile record because she had committed three traffic violations as an adult. Section 1018 of the Delaware Code allows a court to grant a petition for expungement of a juvenile record “provided the petitioner has no other subsequent adjudication of delinquency or adult conviction.” [1] In this ease, the Family Court *818 held that Fuller’s violations of Title 21, which governs motor vehicles, were “subsequent ... adult convictions” (“subsequent adult convictions”)[2] within the meaning of § 1018. But the Family Court has reached different conclusions in other cases as to whether a traffic violation under Title 21 of the Delaware Code is a subsequent adult conviction that precludes expungement of a juvenile record.[3] Consistent with a prior Family Court decision, Fuller now argues that Title 21 offenses are not “subsequent adult convictions” under § 1018 and the denial of her expungement was therefore erroneous.
After careful consideration, we hold that a “subsequent adult conviction” is a later conviction only for a crime in violation of Title 4, 7, 11, 16, or 23 of the Delaware Code, and does not include a violation of Title 21. This interpretation is most faithful to the plain language of § 1018, which uses the general term “subsequent” — i.e., later — “criminal conviction” in a sentence that earlier refers to crimes set forth in Titles 4, 7, 11, 16, or 23, but not Title 21. Moreover, § 1015, the provision that sets forth a specific application process for ex-pungement, requires the use of a database that does not include Title 21 offenses, but does include offenses under Titles 4, 7, 11, 16, or 23. Our interpretation also best reflects the express statutory purpose of “protecting] children and citizens from unwarranted damage which may occur as a result of a juvenile arrest record, even if the arrest resulted in an adjudication of delinquency.”[4] Accordingly, we reverse the Family Court’s decision and hold that Title 21 motor vehicle violations do not constitute “subsequent adult convictions” for purposes of expungement of a juvenile record.
I. FACTUAL AND PROCEDURAL HISTORY
The relevant facts from the record below are undisputed. Fuller was twice adjudicated delinquent in Family Court. The first offense occurred when Fuller was 12 years old, and she pled delinquent in Family Court to one count of criminal mischief on August 13, 2004.[5] For a second offense committed when she was 14 years old, Fuller pléd delinquent to one count of theft on April 29, 2008.[6]
Between the ages of 18 and 21, Fuller committed three motor vehicle violations. First, on November 14, 2009, Fuller received a ticket for lacking headlamps on her car in violation of 21 Del. C. § 4333.[7] Second, Fuller was found guilty of Careless Driving in 2012 for an offense committed in 2010.[8] Finally, Fuller was found guilty of Speeding in Excess of 25 MPH in a Residential District in January 2013.[9]
*819 In a petition dated April 15, 2013, Fuller sought discretionary expungement of her juvenile record under 10 Del. C. § 1018.[10] The State did not oppose her petition. But the Family Court denied the petition on June 14, 2013 because Fuller had been convicted of three Title 21 traffic violations as an adult.[11] The Family Court held that these violations were “subsequent adult convictions” within the meaning of § 1018 that precluded expungement.[12] Fuller appealed, arguing that these traffic violations should not have been considered “subsequent adult convictions” under § 1018.
II. THE JUVENILE EXPUNGEMENT STATUTE
The General Assembly has set forth the procedures governing applications for the expungement of a juvenile record in §§ 1014-1019 of the Delaware Code. We refer to these sections collectively as the “juvenile expungement statute.” A person may seek expungement of her juvenile record under 10 Del. C. § 1017 or 10 Del. C. § 1018, depending on the nature of the juvenile record.[13] Both § 1017 and § 1018 allow the Family Court to grant a petition for expungement provided the petitioner has no “subsequent adjudication of delinquency or adult conviction.”
Section 1016 defines “subsequent adjudication of delinquency or adult conviction” as “an adult conviction resulting from the commission of a separate and distinct offense that occurs after a prior adjudication of delinquency” “unless the context otherwise requires.” It does not define “offense” or “adult conviction,” nor does it refer to any other part of the Delaware Code. Likewise, § 1016(5) defines a “prior adjudication of delinquency” as “an adjudication of delinquency entered by the Court, that occurs prior to the commission of a separate and distinct offense” without defining “offense” or “adjudication of delinquency” or referring to any other part of the Delaware Code.
Section 1015 of the juvenile expungement statute requires the person seeking expungement to file a petition with the Family Court.[14] The petition must include a copy “of that petitioner’s criminal history as maintained by the State Bureau of Identification.”[15] If the expungement petition meets the requirements of § 1018(a), the Family Court’s inquiry shifts to whether the “continued existence and possible dissemination of information relating to the arrest of the petitioner causes, or may cause, circumstances which constitute a manifest injustice to the petitioner.” [16] If the Court so finds, it may grant the expungement request. The statute incorporates a rebuttable presumption that “juvenile arrest records cause a manifest injustice for the petitioner.” [17] This presumption accords with the Delaware General Assembly’s Statement of Policy within the juvenile expungement statute, which reads:
The General Assembly finds that juvenile arrest records are a hindrance to a person’s present and future ability to *820 obtain employment, obtain an education, or to obtain credit. This subchapter is intended to protect children and citizens from unwarranted damage which may occur as a result of a juvenile arrest record, even if the arrest resulted in an adjudication of delinquency.[18]
That policy presumption may well have influenced the State’s position in the case below. The State did not oppose Fuller’s petition before the Family Court. But the Family Court nonetheless denied the request, feeling obligated to do so by its reading of the juvenile expungement statute. In its decision to deny Fuller’s petition, the Family Court adopted the reasoning of a prior decision of that court in M.S. v. State, which concluded that a motor vehicle offense constitutes a “subsequent adult conviction” precluding expungement under Title 10.[19]
In interpreting the juvenile expungement statute in this way, M.S. v. State relied on a dictionary definition of “conviction,” which is a “judgment ... that a person is guilty of a crime.”[20] The Family Court then compared that general definition to the general definition of a criminal conviction found in the Delaware Code, which is set forth in 11 Del. C. § 233. Because § 233 states that a “crime” or “offense” is an act punishable by a fine or imprisonment, and because Title 21 offenses are punishable by a fine or imprisonment, M.S. v. State concluded that Title 21 violations committed after the age of majority are “subsequent adult convictions.” [21] The decision also noted that certain violations in Title 21 are explicitly designated as civil, and that the General Assembly’s determination that the remainder are criminal under the meaning of § 233 could therefore not be seen as inadvertent.[22]
The Family Court, however, has also reached a different conclusion on this issue. In C.M. v. State, the Family Court held that the petitioner’s adult speeding violation did not constitute a “subsequent adult conviction” for purposes of § 1017 because a contrary interpretation would lead to an unreasonable result.[23] In so holding, the Family Court compared § 1017 with the statutes that provide for discretionary expungement of an adult record, all of which allow persons to seek expungement despite having convictions for other criminal offenses.[24] Thus, under the M.S. court’s interpretation of the juvenile expungement statute, a person with a traffic violation could have her adult record expunged in the discretion of the Superior Court, but the same traffic violation would serve as a total bar to the expungement of her juvenile record. The Family Court concluded that this reading of the statute was unreasonable in light of the General Assembly’s express intent “to treat juveniles and juvenile arrest records *821 in a relatively lenient manner for expungement purposes.[25]
III. TITLE 21 VIOLATIONS ARE NOT “SUBSEQUENT ADULT CONVICTIONS” FOR PURPOSES OF THE JUVENILE EXPUNGEMENT STATUTE
On appeal, the State embraces the reasoning of the M.S. decision and argues that the denial of Fuller’s request was correct. Fuller argues that we should instead adopt the contrary position taken in the C.M. case. We, of course, must reach our own de novo determination of which interpretation is correct.[26]
As a practical matter, we do not believe that the bare term “subsequent adult conviction” has only one accepted meaning. As the Family Court did in M.S., it is of course possible to go to Black’s Law Dictionary and § 233 of Title 11 and come out with a sensible conclusion that a traffic violation is a “criminal conviction” as a general matter of Delaware law. But we are not called upon to determine whether the term “conviction” in § 233 of Title 11 includes violations of Title 21. Instead, we are asked to determine what a “subsequent adult conviction” means in the context of the juvenile expungement statute.[27] In that regard, it is relevant that most Americans who have gotten a speeding ticket or some other motor vehicle violation at some point in their adult lives — ie., most Americans— would not consider themselves to have suffered an adult conviction. They would not consider themselves “convicts.”[28]
Our starting point in statutory interpretation is the language of the statute itself.[29] The juvenile expungement statute does not define “subsequent adult conviction” beyond stating that “unless the context otherwise requires,” it is an “adult conviction resulting from the commission of a separate and distinct offense....”[30] Notably, “adult conviction” is not a criminal law term of art with a precise meaning. It is in fact a rather loose usage. Moreover, the statute specifically requires a consideration of the context. Thus, to determine what the General Assembly meant when it used the term “subsequent adult conviction” in the juvenile expungement statute, it is critical to examine how it is used in the context in which it was to be given meaning, ie., within § 1018 itself.[31]
Section 1018(a) provides:
*822 The Family Court may grant a petition for expungement if: (3) [a] child has no more than 2 adjudications of delinquency involving separate and distinct cases where the offenses for which the child was adjudicated delinquent are designated as misdemeanors or violations in Title 4, 7, 11, 16 or 23 ... excepting violent misdemeanors, provided the petitioner has no prior adjudication of delinquency, and provided the petitioner has no other subsequent adjudication of delinquency or adult conviction, and provided that the petitioner has no pending criminal charges, and provided that at least 5 years have passed following the date the second adjudication of delinquency was entered in Family Court.[32]
Section 1018 thus delineates the types of offenses that count as “adjudications of delinquency” for purposes of the statute; these include misdemeanors or violations of “Title 4, 7, 11, 16 or 23” or equivalent violations of local ordinances. Importantly, Title 21 violations are not included in the list of offenses that constitute “adjudications of delinquency.”
Section 1018 then states that the petition may be granted “provided that the petitioner has no other subsequent adjudication of delinquency or adult conviction....” “[Ojther subsequent adjudication ... or adult conviction” should not be read in isolation from the first part of the sentence. The words “other” and “subsequent” indicate that the reader should refer back to the types of offenses identified earlier in the sentence.[33] The statute thus limits the types of “adjudications of delinquency” and “adult convictions” that are relevant for juvenile expungement to those offenses that were previously delineated. Put simply, a “subsequent adult conviction” is best read as referring to a later conviction for a crime in violation of Title 4, 7, 11, 16, or 23. .This conclusion is strengthened by the reality that § 1018 also uses the term “prior adjudication of delinquency” and that reference back is also to a category of offenses not including Title 21 violations.
Furthermore, § 1018 does not permit Title 21 offenses to be expunged at all.[34] The legislative choice to carve out Title 21 offenses from § 1018 strongly supports our interpretation. Under the maxim of statutory interpretation “expression of the one is exclusion of the other” (in Latin, expressio unius est exclusio alterius), we must honor the express legislative decision to omit specific crimes from a comprehensive list.[35] The statute’s categorical exclusion of Title 21 offenses thus supports the inference that the relevant meaning of “subsequent adult conviction” was intended to encompass only the crimes set forth in the titles mentioned in § 1018. That inference is bolstered in another important way by the specific procedure the juvenile expungement statute sets up for applications.
*823 Section 1015(b) requires a juvenile petitioner to attach “a copy of that petitioner’s criminal history as maintained by the State Bureau of Identification” to her petition for expungement.[36] Section 1015 then directs the Family Court to consider the petition on the basis of the criminal history required to be filed -with the petition. Title 21 violations are not listed on these records.[37] For example, Fuller’s criminal history as maintained by the State Bureau of Identification only lists her juvenile charges for theft and criminal mischief, both of which are Title 11 offenses, but does not include her adult violations of Title 21.[38]
The General Assembly’s decision to require State Bureau of Identification records as part of the juvenile expungement petition makes sense if “subsequent adult convictions” mean only crimes set forth in Titles 4, 7, 11, 16, and 23. Title 21 violations cannot be expunged under § 1018. If these violations were relevant to the Family Court’s decision to grant an ex-pungement request, the court would need to consider a criminal record database other than the database selected by the legislature in the juvenile expungement statute. If Title 21 violations were not disqualifying “subsequent adult convictions,” however, the Family Court would only need to consider the petitioner’s criminal history as maintained by the State Bureau of Identification, the only record database identified in the statute.[39]
In so interpreting the juvenile expungement statute, we recognize that other of its subsections use the terms “subsequent” and “prior” in sentences that have a narrower category of offenses than are covered in § 1018.[40] By reading the term “subsequent adult convictions” to cover the broadest possible category of offenses specifically identified in the juvenile expungement statute, which are also those that are listed on the State Bureau of Identification report required to be submitted by the petitioner when seeking expungement, we give the term “subsequent adult conviction” the most expansive definition consistent with the express terms of the juvenile *824 expungement statute. As to this point, it bears emphasis that the juvenile expungement statute only mentions Title 21 offenses in one section, § 1018(g), where it emphasizes that such offenses cannot be expunged under the statute.
Lastly, this interpretation is most consistent with the policy expressly stated within the statute itself: “protect[ing] children and citizens from unwarranted damage which may occur as a result of a juvenile arrest record, even if the arrest resulted in an adjudication of delinquency.” [41] Reading “subsequent adult conviction” to only encompass convictions for crimes in violation of Titles 4, 7,11,16, and 23 is the interpretation most faithful to this statutory purpose.[42] And as the Family Court found in C.M. v. State, this interpretation also avoids an anomaly that would allow a person who committed crimes as an adult to get a discretionary expungement of prior criminal convictions even if she had subsequent Title 21 motor vehicle violations, but deny an expungement in identical circumstances to someone who sought to expunge crimes committed while still not of the age when society permits her to vote.
In so holding, we note that we are not suggesting that Title 21 violations are irrelevant to the expungement process. As with other legitimate factors bearing on the decision to expunge, the Family Court may consider Title 21 traffic violations as evidence that the continued existence of the juvenile arrest record does not constitute a manifest injustice to the petitioner,[43] and thus retains the discretion to decide whether a violation of Title 21 is sufficiently serious to bar expungement. But the existence of a Title 21 motor vehicle violation is not a “subsequent adult conviction” that acts as a total bar to a grant of expungement.
* * *
Our esteemed colleagues have crafted a thoughtful dissent that asserts that we have strained to interpret the juvenile ex-pungement statute to avoid what the dissent admits is the “harsh” consequence of its own contrary interpretation of the statute. We respectfully disagree.
Going further, the dissent argues that our interpretation renders the juvenile expungement statute absurd. The reason for that is that the dissent believes that there are some offenses within Titles 4, 7, 11, 16, and 23 that are as unworthy as speeding tickets of acting as a total bar to expungement, such as the boat ramp violation under 23 Del C. § 2125(b) the dissent unearthed in the Code. But reading the juvenile statute to bar expungement for youth offenders who as adults get a speed *825 ing ticket or another similar violation in Title 21 — something that eventually happens to most adult drivers — does not diminish the absurd result that the dissent conjures up, involving the undoubtedly much rarer boat ramp violation. Rather, accepting the dissent’s interpretation would expand the impact of that result on youth offenders.
At the same time, the dissent voices a concern about our interpretation that comes from a different direction. The dissent argues that our interpretation would permit a discretionary expungement if a petitioner had committed an offense outside of Titles 4, 7, 11, 16, or 23 that the dissent believes to be as serious as those covered by those Titles. But, there is nothing absurd about excluding non-Title 4, 7, 11, 16, and 23 offenses from categorically barring a juvenile expungement. That is the reading most consistent with § 1014, which expressly describes the legislative purpose behind the juvenile ex-pungement statute. Such offenses can still act as a barrier to expungement based on a case-specific judgment by the Family Court.
Therefore, rather than “straining,” our interpretation: (i) is rooted in the text of the juvenile expungement statute itself, which never hints that Title 21 violations have any relevance to the statute and which uses an application process requiring a report that omits such violations;[44] (ii) considers the context in which that text is used, which is what the statute requires us to consider; and (iii) is most faithful to the statute’s own stated purpose. By contrast, the dissent itself strains to read the juvenile expungement statute to generate the harsh result about which it complains.
Traditionally, we show respect to the General Assembly and the difficult job it has to do in crafting a complex code of law by endeavoring to interpret its legislation in a reasonable manner that best advances its evident purposes.[45] Courts have long sought to avoid interpretations that produce inequitable results when there is another reasonable reading of the statute.[46] We adhere to that traditional ap *826 proach.
Although we conclude that Title 21 offenses do not constitute “subsequent adult convictions” for purposes of the juvenile expungement statute, the good faith disagreement between ourselves and our respected colleagues in dissent highlights the reasons why our trial judge colleagues have struggled to reach agreement on the question before us. It may be that there is more work for our General Assembly to do to make the law clearer,[47] or to make the opportunity to receive an expungement more expansive or restrictive.[48] But giving the law as it is written the most reasonable reading consistent with its express purpose is the duty we owe to the General Assembly as the Branch of government charged with the difficult task of crafting our statutory laws in real time, with limited resources.
IY. CONCLUSION
For these reasons, we reverse the Family Court’s decision and hold that Title 21 traffic violations do not constitute “subsequent adult convictions” for purposes of the juvenile expungement statute. Because there was no other basis for denying Fuller’s request, her expungement motion should be granted on remand. Accordingly, the judgment of the Family Court is REVERSED.

. 10 Del. C. § 1018.

. For the reader’s ease, we omit the ellipses for the remainder of the opinion.

. Compare R.E. v. State, Del.Fam., C.A. No. JN97-2157 (Feb. 22, 2012) (denying expungement under § 1018 for a person who had been convicted of driving under the influence as an adult) and M.S. v. State, 2012 WL 6765557 (Del.Fam. Dec. 21, 2012) (denying expungement under § 1017 because petitioner’s adult Title 21 traffic violations were "subsequent adult convictions”), with C.M. v. State, 2013 WL 6174800 (Del.Fam. May 14, 2013) (granting expungement under § 1017 even though petitioner had an adult speeding violation).

. 10 Del. C. § 1014.

. Fam. Ct. Crim. Dkt. In Case ID No. 0405021269.

. Fam. Ct. Crim. Dkt. In Case ID No. 0606013475.

. App. to Answering Br. at 1.

. App. to Answering Br. at 2.

. App. to Answering Br. at 21.

. Del.Supr. No. 460, 2013, DI 8.

. Fam. Ct. Order (Del.Supr. No. 460, 2013, DI 11).

. Id.

. Section 1017 provides for mandatory ex-pungement of misdemeanors or violations of Title 4, 7, 11, 16, or 23, and § 1018 provides for discretionary expungement of these same offenses. Both provisions preclude a grant of expungement if the petitioner has a "subsequent adult conviction.”

. 10 Del C. § 1015(b).

. Id.

. 10 Del. C. § 1018(c).

. Id.

. 10 Del. C. § 1014.

. Fam. Ct. Order (Del.Supr. No. 460, 2013, DI 11); M.S. v. State, 2012 WL 6765557 (Del. Fam. Dec. 21, 2012).

. Id. at *2 (citing Black’s Law Dictionary (9th ed. 2009)).

. Id.

. Id.

. 2013 WL 6174800 (Del.Fam. May 14, 2013).

.Id. at *2. The statutes that provide for discretionary expungement of an adult record require the Family Court to consider a subsequent conviction as evidence "that the continued existence and possible dissemination of information relating to the arrest in question does not constitute a manifest injustice to the petitioner.” 11 Del. C. § 4374 (discretionary expungement in Superior Court); 10 Del. C. § 1025 (discretionary expungement in Family Court).

. C.M. v. State, 2013 WL 6174800, at *2.

. See Arnold v. State, 49 A.3d 1180, 1183 (Del.2012).

. See, e.g., K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 319, 108 S.Ct. 1811, 100 L.Ed.2d 313 (1988) (“Words, like syllables, acquire meaning not in isolation but within their context.”).

. In certain other contexts, Delaware courts have drawn a distinction between traffic violations and criminal "offenses.” See Jester v. Dept. Pub. Safety, 1991 WL 89878 (Del.Super. May 28, 1991) (“Delaware has never treated motor vehicle violations as criminal offenses.”); In re Robert Sacks, 1970 WL 115795 (Del.Super.Nov. 11, 1970) (“Society does not accept the present definition of crime and criminal record as including minor motor vehicle offenses.”).

. Friends of H. Fletcher Brown Mansion v. City of Wilmington, 34 A.3d 1055, 1059 (Del. 2011) (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)) (“[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain ... the sole function of the courts is to enforce it according to its terms.”).

. 10 Del. C. § 1016.

. See, e.g., United Savings Ass’n v. Timbers of Inwood Forest Associates, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (“A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme — because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a sub *822 stantive effect that is compatible with the rest of the law.”) (citations omitted).

. 10 Del. C. § 1018(a)(3) (emphasis added).

. See, e.g., Brown v. Gardner, 513 U.S. 115, 118, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994) (“Since there is a presumption that a given term is used to mean the same thing throughout a statute, a presumption surely at its most vigorous when a term is repeated within a given sentence....”) (citations omitted).

. 10 Del. C. § 1018(g).

. See Leatherbury v. Greenspun, 939 A.2d 1284, 1291 (Del.2007) (quoting NORMAN J. SINGER, Sutherland Statutes and Statutory Construction, § 4915 (3d ed.)) (“‘[Wjhere a form of conduct, the manner of its performance and operation, and the persons and things to which it refers are affirmatively or negatively designated, there is an inference that all omissions were intended by the legislature.' ”).

. 10 Del. C. § 1015(b).

. Title 21 violations are listed in a person’s Delaware Criminal Justice Information System record, which is not mentioned in the expungement statute.

. See Certified Criminal History, attached to Pet. For Expungement.

. Section 1017 of the juvenile expungement statute provides for mandatory ex-pungement in some circumstances. As with discretionary expungement under § 1018, mandatory expungement is not available if a petitioner has a "subsequent adult conviction.” All parties agree that the process for granting a mandatory expungement is largely ministerial, not adversarial, in the sense that expungement of the petitioner’s Title 4, 7, 11, 16, and 23 offenses will be granted so long as the paper record of the petition, including the petitioner’s criminal record on the State Bureau of Identification database, which must be attached to the petition, demonstrates that the petitioner is statutorily eligible. To that point, a petition for mandatory expungement, unlike one for discretionary expungement, need not be served on the Attorney General. Compare 10 Del. C. § 1017(b) with 10 Del. C. § 1018(b). Because the juvenile expungement statute only requires the petitioner to submit her criminal record as maintained by the State Bureau of Identification, which does not include Title 21 violations, mandatory ex-pungement will likely be granted without the court having the information necessary to determine if a disqualifying Title 21 offense has occurred if Title 21 offenses count as "subsequent adult convictions.” We do not believe that we have happened upon a flaw in the mandatory expungement process. Rather, the mandatory expungement process also supports our conclusion that the juvenile ex-pungement petition does not require a report encompassing Title 21 violations because they are not "subsequent adult convictions” for purposes of the juvenile expungement statute.

. 10 Del. C. § 1018(a)( 1), (a)(4).

. 10 Del. C. § 1014.

. In applying the general principle that statutory language should be interpreted in a manner consistent with legislative purpose, courts will look to the stated purposes of legislation in order to resolve ambiguities. See, e.g., United States v. Turkette, 452 U.S. 576, 588-90, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (relying on the RICO statement of findings and purpose in interpreting the term "enterprise”).

. See 10 Del. C. § 1018(c) ("If the Court finds that the continued existence and possible dissemination of information relating to the arrest of the petitioner causes ... circumstances which constitute a manifest injustice to the petitioner, it shall enter an order requiring the expungement of the ... records .... Otherwise, it shall deny the petition.”). Because the juvenile expungement statute requires the Attorney General to be given notice of discretionary expungement petitions, the State may, if it chooses, provide the court with a record of violations not required to be included with the petition, such as Title 21 violations, if the State deems it relevant to demonstrating that denial of the expungement application would not constitute a "manifest injustice.”

. The dissent, after suggesting that we give too little weight to the text of the statute, attempts to minimize the legislature’s use of precise language directing the petitioner to attach her criminal record as maintained by the State Bureau of Identification database. After explaining that the Family Court must rely on the DEOIS system to determine whether any charges are pending (which is contradicted by the dissent’s admission that the petitioner is required to disclose pending charges as part of her petition), the dissent then cites § 1015(c), which states that the court must consider the "entire juvenile arrest record in granting or denying the petition. ...” This language does not tell us what the Family Court is required to look at when determining whether the petitioner has a "subsequent adult conviction.” The statute’s requirement that the petition be accompanied by the State Bureau of Identification criminal history, would, in our view, tend to hint toward that history as the answer.

. See State v. Fletcher, 974 A.2d 188, 196-97 (Del.2009) (“The role of this Court when construing a statute is to give effect to the policy intended by the General Assembly.”); State v. Cooper, 575 A.2d 1074, 1076 (Del.1990) (“Literal or perceived interpretations, which yield illogical or absurd results, should be avoided in favor of interpretations consistent with the intent of the Legislature.”); Giuricich v. Emtrol Corp., 449 A.2d 232, 238 (Del.1982) (“It is fundamental that the Courts ascertain and give effect to the intent of the General Assembly as clearly expressed in the language of a statute.”). See also Cabell v. Marlckam, 148 F.2d 737 (2d Cir.1945) (Hand, J.) ("But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning.”).

. See e.g., Spielberg v. State, 558 A.2d 291, 293 (Del. 1989) (“The statute must viewed as a whole, and literal or perceived interpretations which yield mischievous or absurd results are *826 to be avoided.”); E.I. Du Pont De Nemours & Co. v. Clark, 88 A.2d 436, 438 (Del. 1952) (“The court must necessarily be guided by the presumption that the legislature did not intend an unreasonable, absurd, or unworkable result.... In determining the meaning of ambiguous statutory language, an appreciation of the results which may follow from one possible construction or another may, on occasion, be conclusive as to the correct construction to be placed upon the language, since an irrational, impractical or excessive result presumably could not have been intended by the Legislature.”).

. See e.g., In re Arminger, 2005 WL 6409021, at *1 (acknowledging differences in opinion among decisions of the Superior Court in addressing whether Title 21 offenses can be expunged under the adult expungement statute and expressing a hope for those differ-enees in opinion to be resolved by an appeal to the Supreme Court).

. As to this point, the General Assembly has recently demonstrated its ability to more sensitively apply the criminal laws by amending 7 Del. C. § 1304(i) to provide that "[a]ny conviction of a Class C or Class D Environmental Violation, for a first offense, shall not be reported on criminal history records kept by DELJIS or the State of Delaware” See 79 Del. Laws ch. 421 § 1304(i) (2014).