**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| BAYADA HOME HEALTHCARE, | : | |
| | : | C.A. No.: K24A-05-002 JJC |
| Appellant, | : | |
| | : | |
| v. | : | |
| | : | |
| SHANEEDA SHAW-HICKS, | : | |
| | : | |
| Appellee. | : | |
| | : | |
| | : | |

Submitted: October 10, 2024
Decided:    December 23, 2024

## **ORDER**

On this 23rd day of December 2024, having considered Appellant Bayada Home Healthcare's appeal of the decision of the Industrial Accident Board (the "Board" or "IAB" or the "hearing officer," who acted on behalf of the Board by stipulation in this case), the parties' briefing, and the IAB's record, it appears that:

1.    Bayada Home Healthcare ("Bayada") appeals a portion of an IAB decision ordering Bayada to pay retroactive total disability benefits ("TDB") to its then employee, Shaneeda Shaw-Hicks. The TDB payments subject to the order spanned September 27, 2023, through March 6, 2024 (the "Period").

2.    Ms. Shaw-Hicks suffered an injury while performing her duties as a nurse for Bayada after a patient threw an iPad that struck her in the right eye.[1]

---

[1] Opening Br. at 5 (D.I. 16).

Thereafter, Ms. Shaw-Hicks began receiving TDB in connection with her injury.[2] After several months, Bayada filed a petition to terminate her TDB (the "Termination Petition").[3]

3. The IAB scheduled a hearing on the Termination Petition with a hearing officer.[4] Bayada then filed a motion for summary judgment in connection with its petition.[5] At the time for the scheduled hearing, the Board granted Bayada's motion for summary judgment seeking termination of TDB because Ms. Shaw-Hicks had no expert medical evidence available to demonstrate an ongoing total disability.[6] The Board took no sworn testimony from the parties and conducted no evidentiary hearing in the matter.[7] A lengthy discussion on the record demonstrated a significant amount of confusion regarding who should pay retroactive benefits after Bayada filed the Termination Petition. A Department of Labor (the "Department") employee appeared to address the Workers' Compensation Fund's obligation to pay.[8]

---

[2] *Id*.; *Shaw-Hicks v. Bayada Home Healthcare*, No. 1541059, at 1 (Del. IAB Apr. 11, 2024) [hereinafter the Court will refer to the IAB's decision as "IAB Order"]. According to Ms. Shaw-Hicks, she initially received only one TDB check from Bayada's insurance carrier and then no other payments for the next five months. Answering Br. at 1 (D.I. 21). After much back-and-forth with the carrier, she received a second TDB check for those five months of lost time, along with a notice that Bayada and the carrier intended to file a petition for review to terminate her benefits. *Id*. The termination petition was filed on November 15, 2023. IAB Order, at 3. Thereafter, Ms. Shaw-Hicks received a third and final TDB check, which covered the period up until the Termination Petition was filed. D.I. 21, at 1.

[3] IAB Order, at 3.

[4] *Id.* at 1. By stipulation of the parties, the matter was heard and decided by a Workers' Compensation Hearing Officer, in accordance with Title 19, Section 2301B(a)(4) of the Delaware Code. In a hearing by stipulation under this section, the hearing officer stands in the position of the IAB. 19 *Del. C.* § 2301B.

[5] Bayada's motion for summary judgment asserted that Ms. Shaw-Hicks was no longer totally medically disabled and that she was released by her initial treating physician to return to her pre-accident employment. D.I. 16, Ex. E.

[6] IAB Order, at 2.

[7] The transcript of the IAB hearing before the Court reflects that no proper evidentiary hearing, in the traditional sense, took place. *See generally* Certified Record, Tab 2 [hereinafter the Court will refer to the certified record of the hearing before the Board as "R. at . . ."].

[8] *See* R. at 38:23.

4.      Thereafter, the hearing officer, on behalf of the Board, issued a written decision.  She determined that Ms. Shaw-Hicks TDB should be terminated.  She continued, however, by making at least one finding of fact outside the scope of Bayada's summary judgment motion.   Namely, she ordered Bayada to pay retroactive benefits *for the entirety* of the Period notwithstanding that Bayada had continued to pay benefits for a significant portion of the Period.   The record demonstrates that (1) Bayada had ceased paying Ms. Shaw-Hicks TDB only after it filed the Termination Petition on November 15, 2023,[9] and (2) the Workers' Compensation Fund did not pay Ms. Shaw-Hicks continuing TDB benefits after Bayada filed the Termination Petition.[10]  Thus, the hearing officer granted Bayada's motion for summary judgment, terminated Ms. Shaw-Hicks' TDB, but found the appropriate termination date to be March 6, 2024.[11]  She ordered Bayada to pay Ms. Shaw-Hicks retroactive TDB spanning the entirety of the Period—from September 27, 2023, until March 6, 2024.  Bayada then appealed the decision, in part, to the Superior Court.

5.      On appeal, Bayada contends that the IAB committed an error of law when it ordered it to pay retroactive TDB to Ms. Shaw-Hicks for the Period.[12]  Bayada also challenges the propriety of the Board's decision to decide factual

---

[9] Bayada represented that a Department of Labor representative advised Bayada to stop making payments once the Termination Petition was filed.  Certified Record, Tab 2 at 24:12 [hereinafter the Court will refer to the certified record of the hearing before the Board as "R. at . . ."].  The representative present during the Board hearing denied that the Department of Labor advises employers to stop issuing benefits, however.  R. at 41:13.

[10] *See* R. at 8:2–9:3; 23:4–25:25; 39:15–47:20.

[11] *Id.* at 2–3.  Despite Bayada's assertions and proffered evidence that, (1) by September 14, 2023, Ms. Shaw-Hicks had been given a full duty release to return to work by both of her treating physicians, and (2) it made an offer for Ms. Shaw-Hicks to return to work in November 2023, the hearing officer set the TDB termination date as March 6, 2024—i.e., the date upon which Bayada made a *second* offer for re-employment and the date Ms. Shaw-Hicks acknowledged her refusal to return.  *See id.*

[12] Reply Br. at 4 (D.I. 22).

evidence against it pursuant to its own summary judgment motion. For her part, Ms. Shaw-Hicks defends the Boards' decision. She contends that Bayada terminated her TDB without an agreement or IAB approval to do so.[13]

6. On appellate review of an IAB decision, the Court must determine whether substantial evidence on the record supported the decision and whether the Board committed an error of law.[14] Here, Bayada seems to challenge certain findings of fact. In this case, more appropriately, the failure of the Board to conduct a proper evidentiary hearing was a procedural irregularity that provides no record for review.[15] Accordingly, no substantial evidence review is possible. Bayada further contends that the hearing officer committed an error of law based upon the plain meaning of the controlling statute. For purposes of the latter contention, questions of statutory interpretation raise questions of law that require the Court to conduct a *de novo* review.[16]

7. This appeal turns primarily on the clear language of 19 *Del. C.* § 2347(k) ("Subsection 2347(k)"). Subsection 2347(k) provides, in pertinent part, the following:

> (k) On an employer's petition to review an agreement for total or partial disability benefit entitlement on the ground that the employee is physically able to return to work, compensation shall be paid from the Workers' Compensation Fund by the Department to the employee on acceptance of the employer's petition to review as follows: . . . (1) The Department shall initiate compensation retroactive to the date the petition to review was accepted by the Department. The Department

---

[13] D.I. 21, at 1.

[14] *Powell v. OTAC, Inc.*, 223 A.3d 864, 870 (Del. 2019); 29 *Del. C.* § 10142.

[15] The Court provides no opinion regarding whether the summary judgment record supported finding a number of other factual matters that would have resolved the entire matter in Bayada's favor. Bayada has not fairly raised that issue, and the record is not sufficiently clear for the Court to do so.

[16] *Delaware Bay Surgical Servs., P.C. v. Swier*, 900 A.2d 646, 652 (Del. 2006).

shall issue compensation on receipt of a properly completed eligibility certification form, which has been signed and dated by the employee.[17]

8.      When interpreting a statute, the starting point is the statute's plain language.[18]   There is no need for judicial interpretation when a statute is unambiguous—its plain meaning controls.[19]   Subsection 2347(k) unambiguously provides that the responsibility to pay shifts from the employer to the Department of Labor when an employer files a petition to terminate TDB "on the ground that the employee is physically able to return to work."[20]   Here, Bayada submitted a petition seeking to terminate Ms. Shaw-Hicks TDB on November 15, 2023.[21]   As a result, Bayada's obligation to pay TDB, under Subsection 2347(k), ceased on November 15, 2023.[22]   The IAB committee legal error when it misapplied Subsection 2347(k) by incorrectly imposing the obligation to do so on Bayada. [23]   The portion of the IAB order that requires that must be reversed.  The portion of the order granting summary judgment deciding the issue of whether TDB was properly terminated need not be disturbed.

9.      The Board's order and the briefing on appeal leaves several uncertainties that require a remand.  Namely, it is unclear whether Ms. Shaw-Hicks

---

[17] 19 *Del. C.* § 2347(k)

[18] *Fuller v. State*, 104 A.3d 817, 821 (Del. 2014).

[19] *Id*.

[20] 19 *Del. C.* § 2347(k)

[21] Certified Record, at Tab 1.

[22] Notably, Ms. Shaw-Hicks received TDB compensation from Bayada up until it filed the Termination Petition on November 15, 2023.  R. at 23.; *see also* D.I. 21, at 1 (including Ms. Shaw-Hicks' concession that she received TDB benefits from Bayada through November 15th).  For that additional reason, the IAB's order that Bayada pay her retroactive benefits for the portion of the Period between September 28, 2023, and November 15, 2023, was erroneous.

[23] According to the plain language of Subsection 2347(k), the Department's obligation to issue compensation to the employee becomes mandatory *only* upon the "receipt of a properly completed eligibility certification form, which has been signed and dated by the employee."  An eligibility certification is a Department of Labor form, to be completed by a TDB claimant, whereby the claimant certifies that they are unable to work because of their injury.  R. 39:12.  The Department is responsible for sending eligibility certification forms to TDB claimants.  R. at 41:20.

was presented with the requisite eligibility certification form necessary to receive benefits from the Department. Much of the discussion during the summary judgment hearing seemed to indicate that the Department of Labor would still have processed if it failed to provide the form to her. A second uncertainty remains because Bayada presented evidence with its summary judgment motion that demonstrated that Ms. Shaw-Hicks was offered her pre-injury position in November 2023.[24] The hearing officer's written order did not acknowledge that when setting the TDB termination date. Because of the procedural irregularity at the hearing—itself legal error—there is not substantial evidence on the record to support the Board's decision regarding when Ms. Shaw-Hicks' TDB benefits should have properly expired. No such finding could have properly been made in the absence of an evidentiary hearing unless the Board had granted summary judgment in favor of Bayada in its entirety, which it did not.

10. In conclusion, the Board erred as matter of law when ordering Bayada to pay retroactive TDB to Ms. Shaw-Hicks. Subsection 2347(k) unambiguously required the Department to bear the obligation so long as Ms. Shaw-Hicks met certain requirements. The uncertainties in the record regarding whether the Department will pay retroactive benefits and when Ms. Shaw-Hicks total disability resolved makes it appropriate to remand the matter. The Department may ultimately pay Ms. Shaw-Hicks benefits after it fully considers the propriety of doing so. If the Department seeks to recover benefits paid to Ms. Shaw-Hicks from Bayada under Paragraphs 2347(k)(3) through (5), however, the Department must permit Bayada to participate in an evidentiary hearing to consider whether any such recovery would be appropriate.[25]

---

[24] *See* D.I. 16, Ex. E at ¶ 13.

[25] Providing, in pertinent part, for reimbursement by the employer to the Workers' Compensation Fund following the resolution, dismissal, or withdrawal of a petition to review termination. *See generally* 19 *Del. C.* §§ 2347(k)(3)–(5).

WHEREFRORE, the Board's order is **AFFIRMED, in part, REVERSED, in part**, **and REMANDED** to the IAB to take action consistent with this Order. The Court does not reserve jurisdiction.

**IT IS SO ORDERED**.

/s/Jeffrey J Clark
Resident Judge

*Via File & ServeXpress*
*U.S. Mail to Shaneeda Shaw-Hicks*