IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., a District of Columbia corporation, and THE DAILY CALLER NEWS FOUNDATION, | § § § § | No. 32, 2021 |
| Petitioners Below, Appellants, | § § § § | Court Below – Superior Court of the State of Delaware |
| v. | § § | C.A. No. N20A-07-001 |
| UNIVERSITY OF DELAWARE, | § § § | |
| Respondent Below, Appellee. | § § § | |

Submitted: September 15, 2021
Decided: December 6, 2021

Before **VALIHURA**, **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices; and **GLASSCOCK**, Vice Chancellor,[1] constituting the Court *en banc*.

Upon appeal from the Superior Court of the State of Delaware. **AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**

Theodore A. Kittila, Esquire, William E. Green, Jr., Esquire (argued), HALLORAN FARKAS + KITTILA LLP, Wilmington, Delaware; *for Appellants Judicial Watch, Inc. and The Daily Caller News Foundation*.

William E. Manning, Esquire (argued), James D. Taylor, Jr., Esquire, SAUL EWING ARNSTEIN & LEHR LLP, Wilmington, Delaware; *for Appellee University of Delaware*.

---

[1] Sitting by designation under Del. Const. art. IV, § 12 and Supreme Court Rule 2(a) and 4(a) to complete the quorum.

**MONTGOMERY-REEVES**, Justice:

In 2012, then-Vice President Joseph R. Biden, Jr. donated his Senatorial papers ("Biden Senatorial Papers" or "Papers") to the University of Delaware (the "University"). The donation was made pursuant to a gift agreement (the "Agreement") that placed certain restrictions on the University's ability to make the Biden Senatorial Papers publicly available. In April 2020, Judicial Watch, Inc. ("Judicial Watch") and The Daily Caller News Foundation ("DCNF") (collectively, the "Appellants") submitted requests under the Delaware Freedom of Information Act ("FOIA"), 29 *Del. C.* §§ 10001-10007, to access the Papers and any records relevant to or discussing the Papers.

The University denied both requests, stating that the Papers are not subject to FOIA because the Papers do not meet the definition of "public records" and because the full Board of Trustees never discussed the Papers. Appellants then filed separate petitions with the Office of the Attorney General of the State of Delaware challenging the University's denial of their requests. The Deputy Attorney General issued individual opinions to Judicial Watch and DCNF concluding that the University had not violated FOIA because the records Appellants requested are not subject to FOIA. Appellants then appealed to the Superior Court, which affirmed the Deputy Attorney General's opinions. Appellants have now appealed the Superior Court's ruling to this Court.

2

On appeal, Appellants argue that the Superior Court (1) improperly interpreted the definition of "public records" in 29 *Del. C.* § 10002, (2) erroneously shifted the burden of proof to Appellants to prove that the requested documents are subject to FOIA, (3) incorrectly held that the University carried its burden to justify its denial of records, (4) wrongly concluded that the University adequately searched for records responsive to Appellants' requests, and (5) abused its discretion in not awarding attorneys' fees and costs.

Having reviewed the briefs, the record on appeal, and after oral argument, the Court concludes that the Superior Court properly interpreted the definition of "public record" and did not erroneously shift the burden of proof to the Appellants. However, we conclude that the University failed to carry its burden of justifying its denial of the Appellants' FOIA requests, based on the record before us. Finally, we grant the Superior Court leave to reconsider the request for fees and costs, to the extent it deems that necessary. Thus, we AFFIRM, in part, and REVERSE and REMAND, in part.

## I. RELEVANT FACTS AND PROCEDURAL BACKGROUND

On June 6, 2012, then-Vice President Joseph R. Biden, Jr. donated the Biden Senatorial Papers to the University of Delaware Library.[2] The Papers, which consisted of more than 1,850 boxes of archival records and 415 gigabytes of

---

[2] App. to Opening Br. 55, 90 (hereafter, "A_").

electronic records from President Biden's 36-year career in the United States Senate,[3] were acquired by the University pursuant to a gift agreement that allows the University to make the Papers publicly available after they have been properly processed and archived.[4]

## A. Judicial Watch and DCNF Submit FOIA Requests to the University

On April 30, 2020, Judicial Watch, a nonprofit organization that regularly requests government records under federal and state "freedom of information" acts,[5] submitted a request under 29 *Del. C.* § 10003 (the "Judicial Watch Request") to the University, seeking the following records:

> 1. Any and all records regarding, concerning, or related to the proposed release of the records pertaining to former Vice President Joe Biden's tenure as a Senator that have been housed at the University of Delaware Library since 2012. This request includes, but is not limited to, any and all related records of communication between any official, employee, or representative of the University of Delaware and any other individual or entity, as well as any notes, agenda, minutes, or similar records created in preparation for, during, and/or pursuant to any meeting of the Board of Trustees during which the proposed release of the records was discussed.
>
> 2. Any and all records of communication between any trustee, official, employee, or representative of the University of Delaware and former Vice President Biden,

---

[3] *See* A55 (stating that the Papers are from President Biden's Senate career from 1973 to 2009).

[4] *Judicial Watch, Inc. v. Del. Dep't of Just.*, 2021 WL 22550, at *1 (Del. Super. Ct. Jan. 4, 2021).

[5] A8, 33.

4

any representative of his presidential campaign, or any other individual acting on his behalf between January 1, 2018, and the present.[6]

In short, the Judicial Watch Request sought all records and communications from the University about the proposed release of the Papers, as well as any communications between the University and either President Biden or anyone acting on his behalf (the "Communication Records").

On April 30, 2020, DCNF, a nonprofit media organization,[7] also submitted a FOIA request to the University (the "DCNF Request").[8] The DCNF Request, however, was much broader than the Judicial Watch Request, demanding not only communications between the University and President Biden and his staff, but also visitor logs from the department where the Papers are housed, the Papers themselves, and the Agreement under which the Papers were donated to the University:

> A. All agreements, including modifications, revisions, or updates, concerning the storage of more than 1,850 boxes of archival records and 415 gigabytes of electronic records from Joe Biden's senate career from 1973 through 2009.
>
> B. Correspondence including but not limited to email, phone and written communications between staff of the University of Delaware Library and Joe Biden or members of Joe Biden's senatorial staff, Joe Biden's vice-presidential staff or Joe Biden's political campaign staff, or anyone representing any of those entities between 2010 to the date of this request about Joe Biden's senate records.

---

[6] A33.
[7] A8.
[8] A55-56.

C. Any logs or sign-in sheets recording any individuals who have visited the special-collections department where records from Joe Biden's senate career are stored between 2010 to the date of this request.

D. All records from Joe Biden's Senate career that have been submitted to the University of Delaware Library.[9]

**B.      The University Denies Both Requests and Judicial Watch and DCNF File Petitions with Delaware's Attorney General**

On May 20, 2020, the University's FOIA Coordinator, Associate Vice President, and Deputy General Counsel, Jennifer Becnel-Guzzo, denied both the Judicial Watch Request and the DCNF Request.[10]  The University noted that only University records that relate to the expenditure of public funds are considered "public records" and subject to disclosure under Section 10002(l).[11]  The University reasoned that because no public funds had been spent in relation to the Biden Senatorial Papers, the Papers were not subject to disclosure under FOIA.[12]  Furthermore, in response to the Judicial Watch Request seeking Board of Trustee meeting minutes ("Board Minutes"), the University noted that only the minutes from full Board of Trustee meetings are subject to FOIA.[13]  Ms. Becnel-Guzzo asserted

---

[9] A55.
[10] A32, 57.
[11] *Id.*
[12] A32.
[13] *Id.*

that the University's full Board of Trustees had never addressed the Papers and thus had no records responsive to the Judicial Watch Request.[14]

On May 26, 2020, Judicial Watch filed a petition with the Office of the Attorney General of the State of Delaware, claiming that the University's denial of its request violated FOIA.[15] Judicial Watch challenged the University's denial of its FOIA request on two grounds. First, Judicial Watch claimed that because the Papers are housed at the University's library, and the library's storage space and staff members' time constitute "things of value," the University is expending public funds on the Papers.[16] As such, the requested records relate to the expenditure of public funds and must be disclosed.[17] Second, Judicial Watch argued that the University failed to adequately search for the requested records.[18]

Similarly, on May 28, 2020, DCNF petitioned the Office of the Attorney General of the State of Delaware to review the University's denial of its request for a potential FOIA violation.[19] DCNF noted that because the State provided the University with a $3.6 million contingency fund exclusively for personnel costs, the

---

[14] *Id.*

[15] A28-29.

[16] A29.

[17] *See id.* ("Because the records sought pertain to an activity by the University that entails the expenditure of public funds, . . . we believe that [the University] has failed to fulfill its obligation to comply with [FOIA].").

[18] *Id.*

[19] A55-56.

7

salaries of two of the University's library staff members working on the Papers were possibly paid using public funds.[20] Therefore, it argued, the requested records relate to the expenditure of public funds and the University's denial of its request possibly violated FOIA.[21]

**C. Delaware's Office of the Attorney General Upholds the University's Denial of the Appellants' Requests and the Superior Court Affirms the Deputy Attorney General's Opinions**

On June 25, 2020, and July 1, 2020, the Office of the Attorney General of the State of Delaware issued opinions in response to Judicial Watch's and DCNF's petitions (collectively, the "Opinions"), concluding that the University had not violated FOIA.[22]

On July 2, 2020, the Appellants filed a timely joint notice of appeal in the Superior Court requesting, *inter alia*, an order that the University produce all public records responsive to the Appellants' FOIA requests.[23] The Appellants argued that, in accepting the University's uncorroborated representations regarding the content of the requested records, the Opinions improperly shifted the burden of proof to the Appellants, that the Deputy Attorney General erroneously concluded that the Biden

---

[20] *Id.*
[21] *Id.*
[22] A51, 81.
[23] A7, 13-14.

8

Senatorial Papers are not subject to FOIA, and that the University did not conduct adequate searches to discover whether any records are responsive.[24]

The Superior Court issued a thoughtful opinion on January 4, 2021, affirming the Opinions.[25] The court began its analysis by noting that, as it relates to the University, "FOIA only covers: (1) matters discussed in meetings by the full Board of Trustees; and (2) university documents relating to the expenditure of public funds."[26] The court then held that because the University stated that the Biden Senatorial Papers were never discussed before the full Board of Trustees, the University could properly deny the request for Board Minutes.[27] The court next interpreted the phrase "relating to the expenditure of public funds" to mean "those [documents] that discuss or show how the University itself spends public funds."[28] Because the Papers were not likely to discuss how the University spends public funds, the court held that they are not "public records" and thus not subject to FOIA.[29] In a footnote, however, the court noted that the only requested document that could potentially relate to the expenditure of public funds is the Agreement and asked the University to review it within 30 days and notify the court if the Agreement

---

[24] A12.
[25] *Judicial Watch*, 2021 WL 22550, at *6.
[26] *Id.* at *4.
[27] *Id.*
[28] *Id.*
[29] *Id.* at *4-5.

9

discussed the University using public funds in connection with the Papers.[30] The University's counsel responded to this footnote on January 6, 2021, representing to the Superior Court that she reviewed the Agreement and that it does not discuss the use of public funds in relation to the Papers.[31]

The court then turned to the Appellants' argument that uncorroborated statements by the University's Deputy General Counsel regarding the use of public funds to support the Papers are insufficient to meet the University's burden of proof under Section 10005(c).[32] The court noted that FOIA only requires the University to provide its reasons for denying a request—not supporting proof.[33] The court further noted that because all Delaware lawyers are bound by a duty of candor, the representations by the University's counsel should be given proper weight.[34] The court thus held that the University satisfied its burden of proof required by FOIA.[35]

The court finally considered Appellants' argument that the University's categorical determination that the Papers were not public records under FOIA did not amount to an adequate search for responsive records.[36] The court held that the University was not required to examine the Papers before denying Appellants'

---

[30] *Id.* at *4 n.38.
[31] A157.
[32] *Judicial Watch*, 2021 WL 22550, at *4-5.
[33] *Id.* at *5.
[34] *Id.*
[35] *Id.*
[36] *Id.*

requests because it would be unduly burdensome and unreasonable to require the University to speedily search voluminous records and because the University could make a reasonable categorical conclusion that the Papers do not relate to the University's expenditure of public funds given that President Biden never worked for the University and there is no reason to believe the Papers contain any information about the University's spending.[37]

## II.    STANDARD OF REVIEW

"Questions of law are reviewed *de novo*. Statutory interpretation is a question of law. Accordingly, this Court does not defer to . . . the Superior Court's interpretation of the statute[] in question."[38]   The Court also reviews the proper allocation of the burden of proof *de novo* as that inquiry is also a question of law.[39] The Superior Court's award of attorneys' fees, however, is reviewed for abuse of discretion.[40]

## III.   ANALYSIS

On appeal, Appellants have narrowed the scope of the documents they seek from the University.[41]  The Appellants do not appeal the Superior Court's ruling that

---

[37] *Id.*

[38] *Del. Dep't. of Nat. Res. & Env't Control v. Sussex Cnty.*, 34 A.3d 1087, 1090 (Del. 2011).

[39] *State Farm Mut. Auto. Ins. Co. v. Spine Care Del., LLC*, 238 A.3d 850, 857 (Del. 2020).

[40] *Gannett Co., Inc. v. Bd. of Managers of the Del. Crim. Just. Info. Sys.*, 840 A.2d 1232, 1240 (Del. 2003).

[41] Opening Br. 26-29.

the Biden Senatorial Papers do not relate to the expenditure of public funds.[42]  As such, we do not disturb that ruling.  The Appellants also do not appeal the Superior Court's ruling that, because public library records are exempted from FOIA's definition of public records, the University was not required to disclose the sign-in sheets for the special collections department where the Biden Senatorial Papers are housed.[43]  Thus, that ruling also stands.  Instead, Appellants ask this Court to reverse only the Superior Court's rulings regarding the Agreement, Communication Records, and Board Minutes.[44]

In asserting that they are entitled to these documents, Appellants ask the Court to decide five issues: (1) What is the meaning of "public record" and "meeting" under Section 10002(l); (2) Did the Superior Court erroneously shift the burden to Appellants to prove that the requested documents are subject to FOIA; (3) Did the University carry its burden to justify the denial of access to records; (4) Did the University conduct an adequate search for responsive records; and (5) Did the Superior Court err by not awarding Appellants their legal fees and costs under 29 *Del. C.* § 10005(d).[45]

---

[42] *Id.*; *Judicial Watch*, 2021 WL 22550, at *4.
[43] *Judicial Watch*, 2021 WL 22550, at *5.
[44] Opening Br. 26-29.
[45] *Id*. at 2-3.

All five questions require this Court to analyze the statutory language in 29 *Del. C.* §§ 10002-10005. The principles of statutory interpretation under Delaware law are clear. When interpreting a statute, the Court's priority is to "determine and give effect to legislative intent."[46] The starting point is the language of the statute.[47] "The 'most important consideration for a court in interpreting a statute is the [language] the General Assembly used in writing [the statute].'"[48] "If the statute is found to be clear and unambiguous, then the plain meaning of the statutory language controls."[49] Statutory language is ambiguous when it is reasonably susceptible to different conclusions or interpretations.[50] When statutory language is ambiguous, it should be "interpreted 'in a way that will promote its apparent purpose and harmonize it' with the statutory scheme."[51]

## A. FOIA Framework

FOIA was enacted to ensure governmental accountability by providing Delaware's citizens access to open meetings and meeting records of governmental or public bodies, as well as access to the public records of those entities.[52] This law

---

[46] *Del. Bd. of Nursing v. Gillespie*, 41 A.3d 423, 427 (Del. 2012).
[47] *Fuller v. State*, 104 A.3d 817, 821 (Del. 2014).
[48] *Salzberg v. Sciabacucchi*, 227 A.3d 102, 113 (Del. 2020) (quoting *Boilermakers Loc. 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 950 (Del. Ch. 2013)).
[49] *Ins. Comm'r of Del. v. Sun Life Assurance Co. of Can.*, 21 A.3d 15, 20 (Del. 2011) (citing *Dir. of Revenue v. CNA Holdings., Inc.*, 818 A.2d 953, 957 (Del. 2003)).
[50] *Gillespie*, 41 A.3d at 427.
[51] *Id.* (quoting *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999)).
[52] 29 *Del. C.* §§ 10001-10003; *accord Del. Solid Waste Auth. v. News-Journal Co.*, 480 A.2d 628, 631 (Del. 1984).

"acknowledge[s] that public entities, as instruments of government, should not have the power to decide what is good for the public to know."[53] According to the statute's declaration of policy, FOIA aims to guarantee that Delaware citizens "have the opportunity to observe the performance of public officials and to monitor the decisions that are made by such officials in formulating and executing public policy."[54]

While FOIA aims to ensure that "society remain[s] free and democratic" through "easy access to public records," the statute's assurance of openness and accountability is limited.[55] One such clearly delineated limit regards the University of Delaware and Delaware State University.[56] Section 10002(l) exempts the activities of both universities from FOIA's definition of "public body," "public record," and "meeting."[57] That exemption, however, contains three exceptions: (1) "the Board of Trustees of both universities shall be 'public bodies'"; (2) "university documents relating to the expenditure of public funds" are "public records"; and (3) "each meeting of the full Board of Trustees of either institution shall be a

---

[53] *Del. Solid Waste Auth. v. News-Journal Co.*, 480 A.2d at 631.
[54] 29 *Del. C.* § 10001.
[55] *Id.*; *see* 29 *Del. C.* § 10002 (detailing numerous exemptions to the statute's definition of "public record").
[56] 29 *Del. C.* § 10002(l).
[57] *Id.*

'meeting.'"[58]  Thus, the University is subject to FOIA in only two scenarios: (1) when it is in possession of documents relating to the University's expenditure of public funds, and (2) when it holds meetings of the full Board of Trustees.  The parties dispute the scope and meaning of these two exceptions to the general rule that University documents are not subject to FOIA disclosure.

> **1.  A document is a "public record" when its content relates to the expenditure of public funds**

FOIA provides that University documents are only "public records" when they "relat[e] to the expenditure of public funds."[59]  Appellants interpret this language in the following way:  If the University uses any public funds in relation to a document, that document *involves* the expenditure of public funds.  Therefore, according to Appellants, any records that discuss documents that involve the expenditure of public funds necessarily "*relat[e]* to the expenditure of public funds" and thus are "public records" subject to FOIA disclosure.[60]  As such, the Appellants believe that the Papers, the Agreement, and the Communication Records "relat[e] to the expenditure of public funds" if the University uses any public funds to finance

---

[58] "'Public body,' 'public record' and 'meeting' shall not include activities of the University of Delaware and Delaware State University, except that the Board of Trustees of both universities shall be 'public bodies,' university documents relating to the expenditure of public funds shall be 'public records,' and each meeting of the full Board of Trustees of either institution shall be a 'meeting.'" *Id.*

[59] *Id.*

[60] Opening Br. 26-28; 29 *Del. C.* § 10002(l).

the maintenance and storage of the Papers or even pay the salaries of those University employees working to maintain or promote the Papers in any capacity.[61]

We disagree. As the Appellees argue, and the Superior Court held, a document is a public record under Section 10002(l) when the *content* of those documents relates to the expenditure of public funds. Turning first to the plain language of Section 10002(l), the word "relate" means "to give an account of."[62] Using that definition, the documents must give an account of the University's expenditure of public funds. Section 10002(l) also provides examples of documents that relate to the expenditure of public funds, including requests for proposals and quotes and solicitation of bids for contracts involving public funds.[63] These examples fit squarely into our interpretation of "relating to the expenditure of public funds." Moreover, the sentence's structure is illuminating. Here, the subject of "relating to" in the statute is the university document. As such, the *document* itself must relate to the expenditure of public funds.

---

[61] Opening Br. 26-28; A55.

[62] *Relate*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/relate (last visited Nov. 12, 2021). The endeavor of statutory interpretation requires the Court to "'give the statutory words their commonly understood meanings.'" *Salzberg*, 227 A.3d 102, 113 (quoting *Kofron v. Amoco Chems. Corp.*, 441 A.2d 226, 230 (Del. 1982)).

[63] Section 10002(l) requires that the University label the following documents as relating to the expenditure of public funds: "request for proposal, request for quotation, or other such document soliciting competitive bids for any contract, agreement, capital improvement, capital acquisition or other expenditure proposed to involve any amount or percentage of public funds by or on behalf of the university . . . ." 29 *Del. C.* § 10002(l).

16

Second, even assuming, *arguendo*, that the statute's language is ambiguous, the principles of statutory interpretation support this Court's interpretation. Delaware statutory principles require statutory language to be interpreted in a way that promotes the statute's purpose.[64] As discussed above, while the overall purpose of FOIA is to give Delaware citizens access to public records, Section 10002(l) limits the public's access to the University's documents.[65] That purpose can be gleaned from the definition of "public record" under Section 10002(o). Section 10002(o)'s definition of public record is defined broadly as "information of any kind, owned, made, used, retained, received, produced, composed, drafted or otherwise compiled or collected, by any public body, relating in any way to public business, or in any way of public interest, or in any way related to public purposes . . . ."[66] If the General Assembly wanted to subject the University to this broad definition of "public record," it would not have created a provision wholly excluding the University's activities and records from Section 10002(o)'s definition of "public record" with only one exception for those documents relating to the expenditure of public funds. Looked at another way, because fungible public dollars support, in some part, the University, the Appellants' reading of "relating to" would eviscerate the statutory

---

[64] *Gillespie*, 41 A.3d at 427.
[65] 29 *Del. C.* §§ 10001, 10002(l). The University asserts in its brief that the limitation was created to respect the University's classification as a semi-private body that only receives a fraction of its funding from the state. Answering Br. 12-15.
[66] 29 *Del. C.* § 10002(o).

distinction between true public entities and the University. The purpose of Section 10002(l) is to limit the scope to which the University is subject to FOIA. To employ Appellants' reading would be absurd, undercutting the scheme of the statute.

Thus, we affirm the Superior Court's holding that a document relates to the expenditure of public funds, and thus is a "public record," when the *content* of that document relates to the expenditure of public funds.

### 2. The University's board of trustee meeting minutes and agenda are publicly available

Section 10002(l) of FOIA provides that "each meeting of the *full* Board of Trustees of [the University] shall be a 'meeting' [as defined and used by the statute]."[67] This language is unambiguous and plainly means that meetings of the University's Board of Trustees are not subject to FOIA unless the meeting is of the *full* Board of Trustees. Under FOIA, public bodies must make the meetings, as well as the minutes and agendas from these meetings, publicly available.[68]

Appellants do not seriously dispute this meaning. Instead, they note that the University alleged that it had no records responsive to their request because the full Board of Trustees had not discussed the Papers; this, they contend, may be because the University sought to avoid disclosure by discussing the Papers in executive

---

[67] *Id.* § 10002(l) (emphasis added).
[68] *Id.* § 10004.

18

sessions or through a subset of the Board of Trustees.[69]  Accordingly, they make a

public-policy argument that requests disclosure of documents (assuming any exist)

from such sessions of the Board.  The problem for Appellants is that FOIA

anticipates and permits the use of executive sessions in a way that ensures that the

use of such sessions is publicly disclosed.  Under 29 *Del. C.* § 10004(c), a public

body can only hold a closed executive session when a majority of members at an

open meeting vote to hold the session.[70]  And the result of the vote must be recorded

in publicly available minutes.[71]  Section 10004(c) also requires the purpose of the

closed executive session to be set forth in the meeting's agenda.[72]  Furthermore,

Section 10004(f) requires public bodies to maintain minutes of executive sessions

and make those minutes publicly available.[73]

---

[69] A32; Opening Br. 27.

[70] "A public body may hold an executive session closed to the public upon affirmative vote of a majority of members present at a meeting of the public body. The vote on the question of holding an executive session shall take place at a meeting of the public body which shall be open to the public, and the results of the vote shall be made public and shall be recorded in the minutes. The purpose of such executive sessions shall be set forth in the agenda . . . ."

[71] 29 *Del. C.* § 10004(c).

[72] *Id.*

[73] "Each public body shall maintain minutes of all meetings, including executive sessions, conducted pursuant to this section, and shall make such minutes available for public inspection and copying as a public record." 29 *Del. C.* § 10004(f). Section 10004(b) presents nine situations in which a public body may call for a closed executive session, including "discussion of the content of documents, excluded from the definition of 'public record' in § 10002 of this title where such discussion may disclose the contents of such documents." If the public body holds a closed executive session for one of these purposes, that purpose must be stated in the meeting minutes. It is only for one of these nine stated purposes that a public body can withhold the minutes of its executive sessions and only "so

Therefore, if the University held a closed executive session to discuss the Papers, that must be disclosed in publicly available meeting minutes. Moreover, assuming for argument's sake that the University's Board of Trustees had elected to discuss the Papers in an executive session, Section 10004(c) would require the University to publicly justify that decision.[74]

In other words, the statute explicitly makes only a meeting of the full Board of Trustees a "meeting." Moreover, the public Board of Trustees meeting minutes and agendas, available to the Appellants, would disclose any use of executive sessions regarding the Papers.

### B. The Superior Court Did Not Improperly Shift the Burden of Proof to the Appellants in Violation of 29 *Del. C.* § 10005(c)

The second issue on appeal is whether the Superior Court improperly shifted the burden of proof to the Appellants in violation of 29 *Del. C.* § 10005(c). The Appellants claim that the Superior Court erred in "failing to properly ascribe the burden of proof to the University, and thereby improperly placed it on [them]."[75]

The burden of proof for an enforcement action alleging a FOIA violation is allocated in the statute. Under 29 *Del. C.* § 10005(c), "[i]n any action brought under this section, the burden of proof shall be on the custodian of records to justify the

---

long as public disclosure would defeat the lawful purpose for the executive session." 29 *Del. C.* § 10004(b).

[74] 29 *Del. C.* § 10005(c).

[75] Opening Br. 14-17.

denial of access to records . . . ." Thus, the statute unambiguously places the burden of proof on the public body subject to a FOIA request. As applied to the instant case, the statute requires the University to justify its denial of the requests.

Appellants argue that the Superior Court erroneously shifted the burden of proof to them when it stated, "Appellants have provided nothing other than unsupported speculation in opposition to University Counsel's representation."[76] But an examination of the court's entire analysis reveals that the court did not erroneously place the burden of proof on Appellants. In fact, the court framed the larger issue of whether the University violated FOIA by analyzing whether "[t]he University has [a]dequately shown that the Papers are [n]ot [subject to FOIA]."[77] In beginning its discussion on that issue, the court quoted the burden of proof as allocated by Section 10005(c), noting that the custodian of record bears the burden.[78] The court then properly placed that burden on the University by examining whether representations by the University's counsel were sufficient to meet the burden.[79] The court then concluded its analysis on this issue by finding that "the University met *its* burden to justify denial of access to the Papers."[80] At no point in the court's discussion were the Appellants assigned the burden of proving that the University

---

[76] *Judicial Watch*, 2021 WL 22550, at *5.
[77] *Id* at *4-5.
[78] *Id.* at *4.
[79] *Id.* at *5.
[80] *Id.* (emphasis added).

unjustifiably denied them access to the requested records. Thus, this Court holds that the Superior Court did not improperly place the burden of proof on the Appellants.

## C. The University Did Not Carry Its Burden of Proof Under 29 *Del. C.* § 10005(c)

The true crux of Appellants' "burden of proof" argument is that the Superior Court improperly held that the University met its burden of proof by accepting unsworn representations from the University's counsel regarding the use of public funds to support the Papers.[81] Stated differently, Appellants argue that the unsworn representations from the University's counsel are insufficient to provide the justification for denying the requests under Section 10005(c). According to Appellants, a public body can only satisfy the burden of proof by explaining, under oath, its review process and the reasons for the denial.[82] At a minimum, the Appellants contend a public body must perform a diligent inquiry and provide an affidavit that identifies the sources of information relied on and ties the facts asserted to any claimed exceptions from FOIA.[83]

---

[81] Opening Br. 14.
[82] *See id.* ("Unsworn representations by counsel are generally *not* sufficient to establish substantive facts in Delaware courts.").
[83] Oral Argument at 4:35-4:58 (Sept. 15, 2021), https://livestream.com/accounts/5969852/events/9820231/videos/225896838/player.

The University disagrees and responds that a public body need only state its reasons for a denial under Section 10005(c).[84]  According to the University, support for its interpretation lies at the intersection of Sections 10003(h)(2) and 10005(c). Section 10003(h)(2) requires the public body to "indicate the reasons" for a denial of a FOIA request but notes that the public body "shall not be required to provide an index, or any other compilation, as to each record or part of a record denied."[85]  The University argues that because Section 10003(h)(2) explicitly disclaims indices, the court cannot then read Section 10005(c) as requiring indices or other forms of proof.[86]  The University argues that the Superior Court's holding in *Flowers v. Office of the Governor*[87] supports its interpretation of Section 10005(c).[88]

In *Flowers*, the plaintiff submitted a FOIA request to the Governor's Office, seeking non-privileged emails between the Governor's Office and the former State Treasurer.[89]  The Governor's Office provided some emails but withheld other emails, claiming they were exempt from FOIA's definition of public record in Section 10002(o) under the privilege exemption.[90]  In response, the plaintiff requested that

---

[84] Answering Br. 19.
[85] 29 *Del. C.* § 10003(h)(2).
[86] Answering Br. 19.
[87] 167 A.3d 530 (Del. Super. Ct. 2017).
[88] Answering Br. 19.
[89] *Flowers*, 167 A.3d at 533.
[90] *Id.* at 534.

the Governor's Office provide a privilege log identifying each withheld email.[91] The Governor's Office denied that request, asserting that Section 10003(h)(2) did not require it to produce a privilege log.[92]

After the plaintiff petitioned the Chief Deputy Attorney General to investigate a potential FOIA violation, the Governor's Office responded to the petition with a sworn affidavit, which stated that the emails were withheld under a number of FOIA privileges, including the draft document, legislative, and executive privileges.[93] The *Flowers* affiant, an attorney, swore that she had personally reviewed the withheld emails and that they fell under the previously stated exemptions.[94]

On appeal, the Superior Court confronted the question of whether the Governor's Office's initial response, coupled with the affidavit, provided a sufficient justification for partially denying the plaintiff's records request under Section 10005(c).[95] In particular, the court was tasked with determining whether Section 10003(h)(2)'s bar on indices had any bearing on the burden of proof articulated in Section 10005(c).[96] The court ruled that it did, relying on the doctrine in statutory

---

[91] *Id.* at 534-35.
[92] *Id.* at 535.
[93] *Id.* at 535-36.
[94] *Id.* at 536, 549.
[95] *Id.* at 538.
[96] *See id.* at 540 ("[T]he Governor's Office argues the plain language of FOIA does not require a public body to either outline the contours of any privilege asserted or provide a general description of how the privileges were applied.").

construction that statutes that are *in pari materia* must be construed together.[97]  The court held that when "[h]armonizing § 10003(h)(2)'s bar on indices with § 10005's burden allocation, it is clear to the [c]ourt that the General Assembly contemplated that a public body could meet its burden of proof without resorting to the production of an index or compilation of each document withheld under each FOIA exemption."[98]

The University seizes upon the court's reasoning, arguing that it shows that Section 10005(c) cannot require the public body to "prove up the facts supporting the stated reason as if it were in an adversarial adjudication."[99]  The University's reading, however, mischaracterizes *Flowers*.  Although the University is correct to note that *Flowers* held that the bar on indices in Section 10003(h)(2) also bars indices and other compilations of proof in Section 10005(c), it ignores the remainder of the holding on the very same page of the opinion.  The court found it equally clear "that the General Assembly contemplated that the Chief Deputy would be able to fulfill her responsibility to weigh the sufficiency of those reasons in determining whether a FOIA violation had occurred, and, in turn, that this Court be able to review the Chief Deputy's decision without the considerable benefit of a[n] . . . [i]ndex."[100]  As

---

[97] *Id.* at 548-49.
[98] *Id.* at 549.
[99] Answering Br. 19.
[100] *Flowers*, 167 A.3d at 549.

25

such, the court concluded "that an affidavit, along with a detailed written submission that indicates the reasons for the denial *may* be sufficient to satisfy the public body's burden. Otherwise, the public body would be in the *Catch-22* position of not being required to produce an index, but not being able to meet its burden unless it produced an index."[101]   Thus, it appears to us that the holding in *Flowers* was cabined to *indices* or similar compilations.[102]

The University's attempt to stretch this holding beyond indices and other compilations to include all forms of proof is unsupported.  In fact, *Flowers* can be read to implicitly reject the University's contention.  After all, the *Flowers* court concluded that even an affidavit with a written submission detailing the public body's reasons for the FOIA denial *may*—not shall—be sufficient to satisfy the public body's burden of justifying the denial.[103]   This suggests that such evidence also *may not* meet Section 10005(c)'s burden of proof requirement in certain circumstances.[104]   Thus, even accepting the University's argument that Section 10003(h)(2)'s bar on indices also bars indices under Section 10005(c), it does not follow that a public body need not demonstrate *any* facts underlying the denial of a FOIA request.  Such a standard would be inimical to the statutory placement of the

---

[101] *Id.*
[102] *Id.*
[103] *Id.*
[104] *Id.*

burden of proof on the public body. To the contrary, *Flowers* suggests that at a minimum an affidavit is necessary to meet the burden of proof.[105]

Requiring facts submitted under oath, such as through an affidavit, to justify the denial of records is consistent with the statute's scheme. Section 10005(c) creates a statutory burden of proof that requires a public body to establish facts on the record that justify its denial of a FOIA request.[106] It is from those facts that the Chief Deputy Attorney General and the courts must determine whether the public body has met its burden. In other words, the Chief Deputy Attorney General and the courts rely on facts established by the public body in order to resolve a FOIA dispute.

Here, the University asserted the following facts in an effort to meet its burden of proof: the University does not expend public funds on the Biden Senatorial Papers;[107] and the Agreement does not discuss the use of public funds to support the Biden Senatorial Papers.[108] Thus, the University is asking this Court to determine

---

[105] *Id.* The Dissent notes that "[t]his is not a case . . . like *Flowers*, where the existence of requested documents is admitted but access is denied based on claimed exemptions under the statute or the like. The sole basis asserted by the university for the denial of access to the requested documents in this case is that it does not possess any 'public records' that fit within the Appellants' requests." We agree that an assertion that no documents exist differs from an assertion that the public entity need not provide responsive documents based on a claimed exemption. But both statements rest on an assertion of fact by the public body that the Court must rely on to resolve the action. And, when the public body is seeking to assert a fact based on personal knowledge, that assertion must be made under oath in order to establish *some* competent record.

[106] 29 *Del. C.* §10005(c).

[107] A43.

[108] A157. Although the Appellants continue to request the Board Minutes from the University, and the University made a factual representation that the Papers were never

27

that it has met its burden of proof, fully resolving the dispute, based solely on these factual representations. But the resolution of a legal action must rest on competent, reliable evidence. And the Court has held that when an attorney seeks to establish facts based on personal knowledge, those facts must be asserted under oath.[109] A statement made under oath, like a sworn affidavit, will ensure that the court's determination regarding the public body's satisfaction of the burden of proof is based on competent evidence.

The foregoing suggests that, unless it is clear on the face of the request that the demanded records are not subject to FOIA, satisfaction of Section 10005(c)'s burden of proof requires a statement made under oath. Such a reading of the statutory text is also supported by the statute's purpose. FOIA safeguards a democratic society by ensuring the meetings and records of governmental entities are available to the public.[110] The General Assembly has said FOIA plays a fundamental role in "society remain[ing] free and democratic" because FOIA "further[s] the accountability of government to the citizens of this State."[111]

---

discussed in a meeting with the full Board of Trustees, the Board Minutes must be made available to the public, as discussed in Section III.A.2. The Appellants, therefore, do not need to rely on representations by the University that the Board of Trustees did not discuss the Biden Senatorial Papers. The Appellants may obtain any minutes they wish to review.
[109] *See Brokenbrough v. State*, 522 A.2d 851, 858 (Del. 1987) (noting that attorneys at trial are prohibited from asserting personal knowledge of facts at issue unless they are giving witness testimony).
[110] 29 *Del. C.* §10001.
[111] *Id.*

Therefore, if a public body is to deny citizens an opportunity to "observe the performance of public officials and to monitor the decisions that are made by such officials," the public body must satisfy its burden of proof under FOIA in a manner that tracks the seriousness of the statute's purpose and policy.[112] Statements made under oath, such as through a sworn affidavit, accomplish that goal; they bear earmarks of reliability and instill a measure of seriousness in the affiant by subjecting the affiant to the risk of penalty of perjury.[113]

Finally, the requirement that the public body's statement be made under oath helps to address the statute's inherent information imbalance. Courts have long recognized the requesting party's inherent disadvantage in the FOIA process.[114] Particularly, courts have noted that "[t]h[e] lack of knowledge by the party seeing [sic] disclosure seriously distorts the traditional adversary nature of our legal system's form of dispute resolution. Ordinarily, the facts relevant to a dispute are

---

[112] *Id.*

[113] Under Delaware law, "[a] person is guilty of perjury in the third degree when the person swears falsely." 11 *Del. C.* § 1221.

[114] *Vaughn v. Rosen*, 484 F.2d 820, 824-25 (D.C. Cir. 1973). See also *Guy v. Jud. Nominating Comm'n*, 659 A.2d 777, 781 (Del. Super. Ct. 1995) ("This allocation of the burden of proof [in a FOIA case] . . . recognizes that the plaintiff asserting a freedom of information claim has a disadvantage because only the public body holding the information can speak confidently regarding the nature of the material and the circumstances of its preparation and use which might support an exemption defense."); *McDonnell v. U.S.*, 4 F.3d 1227, 1241 (3rd Cir. 1993) ("The significance of agency affidavits in a FOIA case cannot be underestimated. As, ordinarily, the agency alone possesses knowledge of the precise content of documents withheld, the FOIA requester and the court both must rely upon its representations for an understanding of the material sought to be protected." (quoting *King v. Dep't. of Just.*, 830 F.2d 210, 217-18 (D.C. Cir. 1987))).

more or less equally available to adverse parties. In a case arising under the FOIA this is not true . . . ."[115] In a FOIA proceeding, the public body has a unilateral opportunity to characterize the requested documents, a characterization that establishes whether the records are subject to FOIA. As a result, the Chief Deputy Attorney General and the courts are forced to assess whether records are subject to FOIA relying largely on the representations of the public body. Requiring sworn statements, which subject the affiant or witness to the penalties for perjury, helps offset the inherent disadvantage in the FOIA process.[116]

Thus, we hold that unless it is clear on the face of the request that the demanded records are not subject to FOIA, to meet the burden of proof under Section 10005(c), a public body must state, under oath, the efforts taken to determine whether there are responsive records and the results of those efforts.[117] Because the

---

[115] *Vaughn*, 484 F.2d at 824-25.

[116] The Dissent notes that "[t]he university's responses are made by a person who appears to be a member of senior management." Then, the Dissent states that the University's "responses do not seem . . . to raise any suspicions or lack credibility" and that it "see[s] no reason to question the university's responses in this case." On this basis, the Dissent "would find that the university's responses in this case satisfied its burden of proof." We do not mean to cast aspersions on Ms. Becnel-Guzzo or the veracity of the University's representations. Nor do we suggest that the record, such as it is, implies any misrepresentations of fact. Instead, we simply hold that any person seeking to establish facts based on personal knowledge must do so under oath, regardless of that person's title or profession.

[117] Interestingly, the Delaware Department of Justice's Rules of Procedure for FOIA Petitions and Determinations "encourage[s] [parties] to provide affidavits of individuals with relevant knowledge with their submissions." DEL. DEP'T. JUST., RULES OF PROCEDURE FOR FOIA PETITIONS AND DETERMINATIONS, at 3 (2019), https://attorneygeneral.delaware.gov/wp-content/uploads/sites/50/2019/09/DDOJ-Rules-

University's factual assertions to the Deputy Attorney General and the Superior Court were not made under oath and do not describe the efforts taken to identify responsive documents, they are not sufficient to meet FOIA's burden of proof. On remand, the Superior Court shall determine whether the University has satisfied its burden of proof based on competent evidence in accordance with this ruling. The Superior Court is granted leave to accept additional evidence or submissions as it deems necessary and appropriate.

### D. The Effect of This Opinion on the Superior Court's Finding that the University Performed an Adequate Search for Responsive Records in Response to Certain of the Requests

The Appellants argue that the University made a categorical determination that it had no responsive records, without properly searching the requested records for responsive documents.[118] This categorial determination, they contend, denied them of their legal right to inspect records subject to FOIA.[119] Because we have already found that the unsworn assertions of fact below were insufficient to create a record upon which the Superior Court could find that the University had satisfied its burden of proof, requiring a remand, we need not address this argument further.

---

of-Procedure-for-FOIA-Petitions-and-Determinations.9.26.19.pdf. Further, in the instant case, when the Delaware D.O.J. contacted the University about the Appellants' petitions, it suggested that "[t]o the extent that there are factual issues that the University addresses in its response, the University may wish to provide us with an affidavit signed by someone with knowledge of the information alleged." A36, 66. The University, however, chose not to do so. A43-44, 75-76.

[118] Opening Br. 30-31.

[119] *Id.*

Nonetheless, in the interest of efficiency on remand, we make the following observations.

Unless it is clear on the face of the request that the demanded records are not subject to FOIA, the public body must search for responsive records. A description of the search and the outcome of the search must be reflected through statements made under oath, such as statements in an affidavit, in order for the public body to satisfy its burden of proof. We note that it is not clear on the face of the requests for the Agreement or Communication Records that they are not subject to FOIA, and the University does not contend otherwise. On remand, the University bears the burden to create a record from which the Superior Court can determine whether the University performed an adequate search for responsive documents. Conversely, where it is clear on the face of a request that the demanded records are not subject to FOIA, the public body does not need to search the requested documents for responsive records. Nothing herein should be read to suggest that the University must search the Biden Senatorial Papers for responsive documents. The Superior Court held that the Biden Senatorial Papers are facially excluded from FOIA, and Appellants have not appealed that ruling.[120]

---

[120] *Judicial Watch*, 2021 WL 22550, at *5.

**E.** **The Superior Court Did Not Err by Not Awarding Attorneys' Fees and Costs to Appellants Under 29 *Del. C.* § 10005(d)**

The Appellants assert that the Superior Court abused its discretion in denying their attorneys' fees and costs under 29 *Del. C.* § 10005(d),[121] which states that "[t]he court may award attorney fees and costs to a *successful* plaintiff of any action brought under this section."[122] Specifically, the Appellants note that, as a result of their appeal of the decision of the Attorney General, the Superior Court required the University to review the Agreement for any content relating to the expenditure of public funds. The Appellants argue that this action of the Superior Court demonstrated that the University had failed initially to demonstrate that the Agreement is not subject to FOIA.[123] Having obtained the resulting further review of the Agreement, Appellants argue that they should be found to be successful FOIA plaintiffs and awarded attorneys' fees and costs.[124]

Section 10005(d) only permits a court to award attorney fees and costs when the FOIA plaintiff is successful. Appellants have not yet succeeded in their claims that the University committed a FOIA violation. As such, Appellants are not yet entitled to fees. Because the Superior Court's opinion is reversed and remanded, in

---

[121] Opening Br. 32.
[122] 29 *Del. C.* § 10005(d) (emphasis added).
[123] Opening Br. 33.
[124] *Id.*

33

part, the court is granted leave to reconsider on remand the fee request, to the extent it deems necessary.

## IV. CONCLUSION

For the reasons provided above, the Court AFFIRMS in part and REVERSES and REMANDS in part the Superior Court's judgment. On remand, the Superior Court shall reconsider whether the University satisfied its burden of proof, consistent with this opinion. The court may accept any additional evidence or submissions it deems necessary to determine whether the University has violated FOIA in accordance with this ruling.

**VAUGHN**, Justice, dissenting:

I agree with the Majority's decision that a document relates "to the expenditure of public funds" when the content of the document relates to the expenditure of public funds. An example would be a budgetary document. Other examples, as mentioned by the Majority, would include requests for proposals and quotes and solicitations of bids for contracts involving public funds. I also agree with the Majority that the Superior Court did not shift the burden of proof from the university to the Appellants.

I dissent because I believe that the Appellants' claims in this case have no merit and the case should be put to an end now. The university is subject to FOIA for only two relatively narrow categories of documents. Since the university's Board of Trustees is defined as a "public body" under 29 *Del. C.* § 10002(l), the minutes of its meetings are subject to public inspection and copying as public records under § 10004(f). The other category is "documents relating to the expenditure of public funds."[1]

The university's responses to the Appellants' FOIA requests indicate that the Joseph R. Biden, Jr. senatorial papers were never discussed in a meeting of the Board of Trustees, which is to say that none of the minutes of those meetings contain anything responsive to the Appellants' requests. But the Appellants do not have to

---

[1] 29 *Del. C.* § 10002(l).

take the university's responses as the final word on this point. The Board's agendas, minutes, and meeting materials are publicly available on its website, for anyone, including the Appellants, to see.

As to "documents relating to expenditure of public funds," it is worth noting initially that neither of the Appellants' FOIA requests expressly ask for any such documents. The question, then, is whether any documents related to the expenditure of public funds possessed by the university fit into the categories of requested documents by inference. The university's responses, made by its associate vice president and deputy general counsel, indicate that it has no such documents that are responsive to Appellants' requests. The university's responses are made by a person who appears to be a member of senior management. The responses do not seem to me to raise any suspicions or lack credibility. This is not a case, for example, where a public body denies having public records that one would logically think it does or should have. This is not a case, for further example, like *Flowers*, where the existence of requested documents is admitted but access is denied based on claimed exemptions under the statute or the like. The sole basis asserted by the university for the denial of access to the requested documents in this case is that it does not possess any "public records" that fit within the Appellants' requests. I see no reason to question the university's responses in this case.

FOIA does not require that the public body's response to a FOIA request follow any specific form. The Department of Justice concluded that the unsworn representations of the university's associate vice president and deputy general counsel were sufficient to satisfy the university's burden of proof under 29 *Del. C.* § 10005(c). The Superior Court also found that the university's responses were sufficient to satisfy its burden of proof. The Superior Court believed that the only document that might possibly relate to the expenditure of public funds was the Gift Agreement. It took an extra step of requiring the university to represent specifically that the Gift Agreement did not contain anything concerning the university's use of public funds to support the Biden papers. I agree with the Department of Justice and the Superior Court and would find that the university's responses in this case satisfied its burden of proof.

I would not use this case to make up an across-the-board rule that the public body must file an affidavit as part of its response to a FOIA request whenever it is unclear whether records requested are subject to FOIA. I would affirm the judgment of the Superior Court.