IN THE SUPREME COURT OF THE STATE OF DELAWARE

ALEX OSGOOD, OSAMA §
QAIYMAH, and ERIC FRITZ, §
§ Nos. 1, 2023 and 2, 2023
Petitioners Below, §
Appellants, § Court Below: Superior Court
§ of the State of Delaware
v. §
§ C.A. Nos. 21X-00167, 21X-
STATE OF DELAWARE, § 00109, 21X-00195 (N)
§
Appellee. §
§

Submitted: September 13, 2023
Decided: December 8, 2023

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices; constituting the Court *en Banc*.

Upon appeal from the Superior Court. **REVERSED AND REMANDED**.

Nicole M. Walker, Esquire, Eliza M. Hirst, Esquire, OFFICE OF DEFENSE SERVICES, Wilmington, Delaware; John P. Deckers, Esquire (*argued*), OFFICE OF DEFENSE SERVICES, Wilmington, Delaware *for Appellants Osama Qaiymah and Eric Fritz*.

Thomas A. Foley, Esquire (*argued*), Wilmington, Delaware *for Appellant Alex Osgood*.

Elizabeth R. McFarlan, Esquire (*argued*), DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware *for Appellee State of Delaware*.

Dwayne J. Bensing, Esquire, AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF DELAWARE, Wilmington, Delaware; Jason D. Angelo, Esquire, REED SMITH LLP, Wilmington, Delaware *for Amicus Curiae, American Civil Liberties Union Foundation of Delaware, in support of Appellants*.

**SEITZ**, Chief Justice, for the Majority:

In 2019 the Delaware General Assembly enacted the Adult Expungement Reform Act, which was followed in 2021 by the Clean Slate Act. The Acts expanded the individuals eligible for expungement and created an automatic expungement process for certain Delaware criminal records. The Acts apply "to all criminal cases brought and convictions entered in a court in this State."[1] Expungement is limited to, among other things, individuals with "no prior or subsequent convictions."[2]

The petitioners requested expungement of their criminal records. Although they did not have prior or subsequent Delaware convictions that would bar expungement, they had prior or subsequent out-of-state misdemeanor convictions. The Superior Court denied their petitions and reasoned that the limitation "no prior or subsequent convictions" included out-of-state convictions.

The question on appeal is whether the "prior or subsequent convictions" limitation in the Acts includes out of state convictions. After reading the statute as a whole and avoiding inconsistencies and impracticalities, we hold that "prior or subsequent convictions" refers only to Delaware convictions, not to out-of-state convictions. We reverse and remand for further proceedings consistent with this opinion.

---

[1] 11 *Del. C.* § 4372(a).
[2] *Id*. at §§ 4373(a)(2), 4374(a).

I.

In 2011, Alex Osgood pled guilty in Delaware to a single count of possession with intent to deliver marijuana.[3] In 2021, Osgood filed a petition in the Superior Court for discretionary expungement of his criminal record. Now a college graduate, Osgood sought expungement to "regain his right to vote and to forge a more lucrative career."[4] The State opposed expungement based on a prior 2006 misdemeanor conviction in West Virginia for possession of marijuana. A Superior Court Commissioner denied Osgood's request for expungement based on the West Virginia conviction.[5]

In 2015, Osama Qaiymah pled guilty in Delaware to misdemeanor possession of untaxed tobacco products.[6] In 2020, Qaiymah sought mandatory expungement of his criminal record. He now holds a master's degree and sought expungement as "his qualifications and potential exceed his current employment status" as a grocery store employee.[7] In April 2021, Qaiymah received a letter from the Delaware State Police Bureau of Identification ("SBI") that denied his request for expungement

---

[3] C.A. No. 21X-00167. Osgood was arrested for various drug-related offenses, but the State dismissed these charges. He was also arrested for Underage Consumption of Alcohol in 2005 and 2006 as well for Graffiti in 2006, but these arrest records were expunged in 2021. He was separately arrested in 2015 in Vermont for Driving Under the Influence, but this matter was resolved through conviction for Careless or Negligent Operation of a Vehicle.

[4] App. to Opening Br. of Osgood at A8 (Statement of Manifest Injustice by Alex Osgood).

[5] *Osgood v. State*, Del. Supr., C.A. No. 21X-00167, Parker, Comm'r (June 30, 2022) (ORDER).

[6] C.A. No. 21X-00109.

[7] App. to Opening Br. of Qaiymah and Fritz at A32 (Statement of Manifest Injustice by Osama Qaiymah).

without an explanation.[8] The letter informed him that he would need to file a petition in the Superior Court to see if he is eligible for expungement. After Qaiymah filed an expungement petition in the Superior Court, the State opposed his petition based on his prior 2018 and 2020 misdemeanor convictions in Pennsylvania and Maryland for possession and transportation of unstamped cigarettes. A Superior Court Commissioner denied expungement based on the out-of-state convictions.[9]

In 2010, Eric Fritz pled guilty in Delaware to malicious interference emergency communications, offensive touching, and non-compliance with condition of bond. In 2021, Fritz sought to expunge his criminal record. Fritz, legally deaf and now married with children, sought expungement so that he can be involved in his children's school activities and obtain employment.[10] Like Qaiymah, Fritz received a letter from the SBI that denied his petition without an explanation.[11] He petitioned the Superior Court for mandatory and discretionary expungement. While some of the charges stemming from his arrest were eligible for mandatory expungement, the State opposed expungement of the remaining charges based on his 2011 Pennsylvania conviction for disorderly conduct.

---

[8] *Id.* at A28.
[9] *Qaiymah v. State*, Del. Super., C.A. No. 21X-00109, Parker, Comm'r (June 30, 2022) (ORDER).
[10] App. to Opening Br. of Qaiymah and Fritz. at A86 (Statement of Manifest Injustice by Eric Fritz).
[11] *Id.* at A81.

On June 30, 2022, the Superior Court Commissioner granted expungement for the charges eligible for mandatory expungement, but otherwise denied expungement due to the Pennsylvania conviction.[12] The Commissioner held that "the Legislature intended to give a person who had one misstep, one criminal conviction, and who had thereafter demonstrated he had learned from his mistake and not reoffended, the opportunity to erase that one mistake from the public eye."[13]

The three petitioners appealed the Commissioner's orders to a Superior Court judge. They argued that the "no prior or subsequent convictions" language in the mandatory and discretionary expungement statutes (together the "Expungement Statutes") was limited to prior or subsequent convictions in Delaware. Central to their argument was Section 4372(a) of the Expungement Statutes which states that "[t]his subchapter applies to all criminal cases brought and convictions entered in a court in this State."[14] According to the petitioners, the applicability provision meant that only criminal convictions entered in Delaware should be considered for expungement eligibility.

The Superior Court consolidated the three petitions and in a brief order affirmed the Commissioner's rulings.[15] The court found that the applicability

---

[12] *Fritz v. State*, Del. Super., C.A. No. 21X-00195, Parker, Comm'r (June 30, 2022) (ORDER).
[13] *Id.* at 4.
[14] 11 *Del. C.* § 4372(a).
[15] *Fritz v. State of Delaware,* Del. Super., C.A. Nos. 21x-00195, 21x-00167, 21x-0019, Scott, J. at 5–7 (Dec. 6, 2022) [hereinafter *Super. Ct. Order*] (ORDER).

language of Section 4372 "pertains to the jurisdictional limitations of the Delaware Courts to consider expungement of only Delaware arrests and convictions."[16] In other words, Section 4372 meant only that a Delaware court had no jurisdiction to expunge out-of-state criminal convictions. The court noted further that the General Assembly would have expressly excluded out-of-state convictions if that was its intent.[17] Without more, the Superior Court found that Sections 4373 and 4374 were unambiguous and included out-of-state convictions in the scope of "no prior or subsequent convictions."[18]

The petitioners have appealed the Superior Court's decision denying expungement. On appeal we address an issue of law – whether the Superior Court properly interpreted the Expungement Statutes – and therefore review its decision *de novo*.[19]

## II.

The General Assembly enacted the Adult Expungement Reform Act to address a pervasive problem – "a criminal history is a hindrance to a person's present and future ability to obtain employment, housing, education, or credit."[20] The Act

---

[16] *Id.* at 7.
[17] *Id.*
[18] *Id.*
[19] *Delaware Solid Waste Auth. v. Delaware Dep't of Nat. Res. & Env't Control*, 250 A.3d 94, 105 (Del. 2021) ("The Court reviews *de novo* questions of law, including questions of statutory interpretation . . . .").
[20] 11 *Del. C.* § 4371.

"protect[s] persons from unwarranted damage which may occur when the existence of a criminal record continues indefinitely."[21] The Clean Slate Act continued the legislative effort to address the deleterious effect of criminal histories by creating a process to perform mandatory expungement automatically.

According to the synopsis of the Act, the State needed an automatic expungement system because "under the petition-based system, only a small fraction of people eligible for expungement ever obtain this important relief."[22] Together, the Acts provide for mandatory and discretionary expungement of criminal records.

Mandatory expungement applies to a range of specific felonies, misdemeanors, and violations in the Delaware Code. The SBI, which maintains state criminal records, must expunge a misdemeanor conviction record when: (i) a person has been convicted of one or more misdemeanors or violations relating to the same case; (ii) five years have passed since the date of conviction; and (iii) a person has "no prior or subsequent convictions that bar eligibility for expungement under this subchapter."[23] The SBI must also expunge felony conviction records if: (i) a person was convicted of specified felonies; (ii) ten years have passed since the later of the

---

[21] *Id.*

[22] S. 111, 151st Gen. Assemb. (Del. 2021). "An initial review of adult criminal cases by the Delaware Criminal Justice Information System (DELJIS) estimates that upon enactment 290,980 adults with 594,537 cases would immediately be eligible for mandatory expungement, in addition to an unknown recurring number of newly eligible cases that would commence monthly beginning August 1, 2024." Fiscal Note, S. 111, 151st Gen. Assemb. (Del. April 16, 2021).

[23] §§ 4373(a)(2)(a), (b).

date of conviction or release; and (iii) a person has "no prior or subsequent convictions that bar eligibility for expungement under this subchapter."[24] As of now, the SBI is responsible for expunging eligible records upon request. Beginning in August 2024, the SBI must identify and expunge eligible convictions automatically.[25]

Discretionary expungement is available by petitioning the Superior Court or Family Court when: (i) a person was convicted of one or more eligible misdemeanors relating to the same case, at least 3 years have passed, and "the person has no prior or subsequent convictions;" (ii) seven years have passed since conviction of certain misdemeanors, and "the person has no prior or subsequent convictions;" or (iii) at least seven years have passed since the date of conviction of specified felonies and the person "has no prior or subsequent convictions."[26]

For mandatory expungement, the petitioner must first apply to the SBI for expungement and provide a copy of their criminal history which they obtain from the SBI.[27] The SBI notifies the petitioner whether they are eligible. If the petitioner is ineligible, they receive a form letter denial without an explanation, notifying the petitioner that they have forty-five days to petition a court for review of the denial.[28]

---

[24] § 4373(a)(2)(c).
[25] § 4373A(b).
[26] §§ 4374(a)(1)–(3).
[27] § 4373(a).
[28] *See* App. to Opening Br. of Qaiymah and Fritz at A28.

For discretionary expungement, the petitioner must file a petition in either the Superior Court or Family Court.[29] The petitioner can include in their petition a case that is eligible for mandatory expungement under Section 4373.[30] Once filed, the petitioner must serve the Attorney General with a copy of the petition and attach a certified copy of their criminal history "as maintained by the State Bureau of Identification."[31] The criminal history provided by the SBI does not include out-of-state state crimes.[32] Expungement petitions may be decided without a hearing if the reviewing court decides that:

> [T]he continued existence and possible dissemination of information relating to the arrest or conviction of the petitioner causes, or may cause, circumstances which constitute a manifest injustice to the petitioner, it shall enter an order requiring the expungement of the law-enforcement and court records relating to the charge or case. Otherwise, it shall deny the petition. The burden is on the petitioner to allege specific facts in support of that petitioner's allegation of manifest injustice, and the burden is on the petitioner to prove such manifest injustice by a preponderance of the evidence.[33]

If the Superior Court or Family Court Commissioner denies discretionary expungement, the petitioner may seek review by a Judge of that court.[34]

---

[29] § 4374(c).
[30] § 4374(d).
[31] § 4374(e).
[32] Obtaining a Certified Delaware Criminal History, Delaware State Police, https://dsp.delaware.gov/obtaining-a-certified-criminal-history/. Notably, the SBI has a process to obtain a certified Delaware and federal criminal history, but nothing for other states. *Id.*
[33] § 4374(f).
[34] § 4374(g).

III.

At the outset, we acknowledge that the phrase "prior or subsequent convictions" does not say "Delaware" convictions. From this, it might be tempting to jump immediately to the general definition of "conviction" in the criminal statutes, as our Colleagues in Dissent do, and then to the conclusion that "convictions" include out of state convictions. But words in a statute should be given meaning through the context in which they are used. As this Court said in *Fuller v. State*:

> As a practical matter, we do not believe that the bare term "subsequent adult conviction" has only one accepted meaning. As the Family Court did in M.S., it is of course possible to go to Black's Law Dictionary and § 233 of Title 11 and come out with a sensible conclusion that a traffic violation is a "criminal conviction" as a general matter of Delaware law. But we are not called upon to determine whether the term "conviction" in § 233 of Title 11 includes violations of Title 21. Instead, we are asked to determine what a "*subsequent* adult conviction" means in the context of the juvenile expungement statute.[35]

In *Fuller*, the petitioner sought expungement of her juvenile record. At the time, 10 *Del. C.* § 1018 allowed for expungement "provided the petitioner has no other subsequent adjudication of delinquency or adult conviction."[36] Fuller had committed traffic violations as an adult. The Family Court denied her expungement

---

[35] 104 A.3d 817, 821 (Del. 2014) (citing *M.S. v. State*, 2012 WL 6765557 at *2 (Del. Fam. Ct. Dec. 21, 2012)).
[36] *Id.* at 822.

10

petition. The question was whether Title 21 traffic offenses counted as subsequent adult convictions. This Court decided they did not.

Our Court looked to the context in which "subsequent adjudication of delinquency or adult conviction" was used and noted that Section 1018 itself did not permit the expungement of Title 21 traffic offenses.[37] "The statute's categorical exclusion of Title 21 offenses thus support[ed] the inference that the relevant meaning of 'subsequent adult conviction' was intended to encompass only the crimes set forth in the titles mentioned in § 1018."[38] In other words, consideration of a subsequent adult conviction for eligibility purposes was limited to the universe of convictions which were themselves expungable under Section 1018.

The same reasoning applies here. The Expungement Statutes do not define "prior or subsequent convictions." Like *Fuller*, those words do not have only one accepted meaning. The Statutes lead us to their meaning by referring to Section 4372 and its applicability and exclusion provisions. Section 4372(a) states that "[t]his subchapter applies to all criminal cases brought and *convictions entered in a court in this State*."[39] Out-of-state convictions are not mentioned in the Expungement Statutes or listed as "Exclusions" to the Statutes.[40] In our view, "prior

---

[37] *Id*. at 824 ("[I]t bears emphasis that the juvenile expungement statute only mentions Title 21 offenses in one section, § 1018(g), where it emphasizes that such offenses cannot be expunged under the statute.").

[38] *Id.* at 822.

[39] § 4372(a) (emphasis added).

[40] See §§ 4373(b) and 4374(b) (listing exclusions).

11

or subsequent convictions" mean what Section 4372 says – the statutory expungement scheme applies to Delaware prior and subsequent convictions, and not those from other states.

According to the Superior Court, the language "in this State" "pertains to the jurisdictional limitations of the Delaware Courts to consider expungement limited to Delaware arrests and convictions."[41] In other words, the General Assembly included the reference to Delaware convictions in Section 4372 to stake out a jurisdictional limitation – Delaware cannot expunge convictions in other states.[42]

There are several problems with this interpretation.[43] First, there is no credible argument that Delaware could expunge federal criminal convictions or convictions from other states. The General Assembly had no need to state the obvious and address something not subject to reasonable dispute.[44] Similarly, Section 4372(c)

---

[41] *Super. Ct. Order* at 7.

[42] *Id.*

[43] It appears that the State and the Dissent were not persuaded by the Superior Court's interpretation of "in this State" and have offered a new one – to clarify that the Expungement Statutes apply to arrests and convictions in not just some, but all Delaware courts. Answering Br. at 11–14; Dissent at 2–3. This argument was not raised below, so typically we would not consider it. In any case, the difference of opinion among the Superior Court, the Majority, the State, and the Dissent shows that the meaning of "prior or subsequent convictions" is far from clear. We also note that Section 4372(c) defines "Case" and "Conviction" broadly, and "Expungement" applies to "all law-enforcement agency records and court records relating to a case in which an expungement is granted." And Sections 4374(c) and (d) identify when a petitioner must file their application in either the Superior Court or Family Court. The new interpretation duplicates what is already clearly stated in the Statutes.

[44] *See Salzberg v. Sciabacucchi*, 227 A.3d 102, 117–18 (Del. 2020) ("It is presumed that 'the General Assembly purposefully chose particular language and [we] therefore construe statutes to avoid surplusage if reasonably possible.'" (quoting *Sussex Cnty. Dep't of Elections v. Sussex Cnty.*

already defines "Expungement" to mean that "law-enforcement agency records and court records relating to a case in which an expungement is granted, including any electronic records, are destroyed, segregated, or placed in the custody of the State Bureau of Identification . . . ." A Delaware court cannot order that an out-of-state record be "destroyed" or "placed in the custody" of the SBI. There was no need to clarify a limitation that does not exist.

Second, like *Fuller*, the internal references to specific crimes within the statute is relevant to the scope of the statute. The Expungement Statutes refer to Delaware crimes, not out-of-state crimes or Delaware-equivalent out-of-state crimes and convictions.[45] The repeated references to Delaware statutory law, but not to a

---

*Republican Comm.*, 58 A.3d 418, 422 (Del. 2013)); *Hudson Farms, Inc. v. McGrellis*, 620 A.2d 215, 218 (Del. 1993) ("[I]t is presumed that the General Assembly is aware of existing law when it acts . . . .").

[45] *See, e.g.*, § 4373(a)(1)(d) (permitting eligibility for expungement if a person was convicted of underage possession of alcohol under § 904(e) or (f) of Title 4); § 4373(a)(2)(b) (allowing for mandatory expungement when, among other things, a person was convicted of drug possession under § 4756 of Title 16); § 4373(b)(3) (denying mandatory expungement for "[a]ny misdemeanor set forth in subparts A, B, C, or F of subchapter VI of Chapter 5 of this title"); § 4374(a)(1) (permitting expungement, among other things, if a petitioner was "[w]as convicted of 1 or more misdemeanors other than those listed in § 4373(b) of this title"); § 4374(b)(1) (barring eligibility from discretionary expungement if convicted of "[a] Title 11 felony listed in § 4201(c) of this title"); *cf.* 11 *Del. C.* § 2116(a)(2) (defining a "Subsequent Offense" to mean "any violent felony or any similar offense set forth under the laws of another state, the United States or any territory of the United States"); § 1448 (a)(1) (prohibiting from purchasing a firearm any "person who has been convicted in this State or other jurisdiction of a felony or a crime of violence . . ."); § 4121(a)(4)(c) (including in the definition of "Sex offender" any person who has been "Convicted or adjudicated delinquent of any offense specified in the laws of another state, commonwealth, territory, or other jurisdiction of the United States requiring registration in that jurisdiction . . .").

general or broader concept of a conviction or any crime, confirms the Delaware-centric nature of the Expungement Statutes.[46]

Third, including out of state convictions under the Expungement Statutes leads to multiple inconsistencies. Section 4375 provides that "a person who was convicted of a crime, other than those specifically excluded under subsection (b) of this section, who is thereafter unconditionally pardoned by the Governor may request a discretionary expungement under the procedures under § 4374(c) through (h) and (j) of this title."[47] Section 4375(b) lists six specifically excluded crimes, without any mention of out-of-state convictions.[48] Sections 4374(c)–(h) and (j) also do not require a petitioner to have "no prior or subsequent convictions." Thus, someone with a Delaware pardon but with out-of-state convictions could seek expungement for the qualifying Delaware crimes, but someone without a pardon and similar out-of-state convictions is precluded from doing the same.

---

[46] Our Colleagues in Dissent rely on the general definition of a conviction in Section 222 of Title 11, referred to in Section 4372(c) (defining conviction as "a verdict of guilty by the trier of fact, whether judge or jury, or a plea of guilty or a plea of nolo contendere accepted by the court"). Section 222 merely distinguishes convictions under our criminal code from other criminal dispositions such as probation before judgment, entry into the juvenile offender civil citation program, commitment to custody of a juvenile, probation before adjudication of delinquency, the entry into first offenders domestic violence diversion program, and civil penalties. *See, e.g.*, 11 *Del. C.* § 4218; 10 *Del. C.* §§ 1004A, 1009, 1009A; 1024; 3 *Del. C.* §§ 1110, 2280, 1331; *see also* Section 4372(c)(2)(b) ("'Conviction' does not include a case in which a person is adjudicated delinquent under § 1002 of Title 10."). Section 222 does not distinguish between in-state and out-of-state convictions.

[47] 11 *Del. C.* § 4375(a).

[48] *Id*. at § 4375(b).

14

Fourth, the State's reading interferes with automatic expungement and leads to inconsistent outcomes. The SBI does not maintain a comprehensive database of all out-of-state criminal records, and Section 4373A – automatic expungement – does not require the SBI to search out-of-state criminal records.[49] Under the State's and the Dissent's reading of the Expungement Statutes, the SBI must conduct a comprehensive search of all federal, state, and foreign territories for prior or subsequent convictions – something the State does not do when processing Delaware mandatory expungement requests.[50] Given the need to secure reliable out-of-state conviction records, and the extensive additional resources needed to make such a far-ranging inquiry, the General Assembly would have addressed both the process and expense in the Expungement Statutes. Moreover, Delaware has no control over the accuracy of out-of-state records and is unable to amend or resolve errors in out-

---

[49] Chapter 85 of Title 11 of the Delaware Code is concerned with the "State Bureau of Identification." Section 8502 defines "[c]riminal history background check" as "the acquisition of state or federal criminal history record information for an individual." 11 *Del. C.* § 8502(3). The statute further defines "criminal history record information" as "information collected by state or federal criminal justice agencies." 11 *Del. C.* § 8502(4). "Criminal justice agenc[ies]" are defined as "[e]very court of this State and of every political subdivision thereof" and a list of Delaware agencies and the Federal Bureau of Investigation. 11 *Del. C.* § 8502(5). Section 8502(5) is cross referenced by Section 4372(c)(3) for its definition of "[c]riminal justice agencies."

[50] The National Crime Prevention and Privacy Compact Act of 1998 established a reciprocal system of automated record exchange among signatory states for background checks. *See* Pub. L. No. 105-251, 112 Stat. 1870 (codified as amended at 42 U.S.C. §§14601-16 (2000)). While Delaware is a signatory to the compact, only 34 other states have joined. *See* Compact Council States and Territories Map, https://www.fbi.gov/file-repository/compact-council-states-territories-map/view. For a complete background check of all states, the State would have to enter into agreements with every other jurisdiction to facilitate access to their records.

of-state record keeping. Inaccuracies in criminal databases are well documented.[51] There are also foreign records and military adjudications to be considered.

Our Colleagues in Dissent are unpersuaded by the record keeping challenges posed by expungement. They argue that those with a rejected mandatory expungement can raise issues through the discretionary expungement process in the Family Court or Superior Court. But automatic expungement is meant to provide relief on a large scale.[52] Forcing mandatory expungement cases into the petition procedure is contrary to the Expungement Statutes' broader purpose. A petitioner has no visibility into discrepancies during the automatic expungement process and would have to apply to the SBI for mandatory expungement, receive a denial, and then petition the Superior or Family Court for expungement.[53] Other states that consider out of state records in expungement proceedings do not do so during the

---

[51] *See, e.g.*, Carrie Teegardin and Brad Schrade, *Key Information Missing from Georgia's Criminal Records Database*, ATLANTA JOURNAL-CONSTITUTION (Jan. 25, 2022) ("Georgia's database of criminal histories is filled with information gaps that make the records unreliable for the state's judges, employers and probation officers."); *see also* Wells, Martin, et al., *Criminal Record Inaccuracies and the Impact of a Record Education Intervention on Employment-Related Outcomes*, available at https://www.dol.gov/sites/dolgov/files/OASP/evaluation/pdf/LRE-Wells FinalProjectReport_December2020.pdf ("Inaccuracies on criminal records often stem from mismatched identities, erroneous inclusion of minor offenses, and a lack of information about case dispositions." (citations omitted)).
[52] S. 111, 151st Gen. Assemb. (Del. 2021) ("[U]nder the petition-based system, only a small fraction of people eligible for expungement ever obtain this important relief.").
[53] 11 *Del. C.* § 4373A(d) ("Nothing in this section precludes an individual from filing a petition for expungement of records under § 4373(a) of this title that are eligible for automatic expungement under this section if an automatic expungement has not occurred.").

automatic expungement process.[54] And it does not appear that the General Assembly intended to enact automatic expungement, and then to hamper it at inception by transforming the inquiry from a search of Delaware records to an all-encompassing survey of extraterritorial records.[55]

Fifth, some convictions under Delaware criminal statutes are exempt from the "prior or subsequent convictions" restriction in the expungement statutes.[56] The General Assembly tailored the Expungement Statutes and their inclusions and exclusions by referring only to Delaware conduct.[57] If out-of-state convictions were considered for expungement purposes, there is a risk of arbitrary outcomes for Delawareans. Even if a conviction in another jurisdiction is equivalent to a Delaware

---

[54] Some of the earliest "Clean Slate" legislation took place in Utah and New Jersey. Utah limits automatic expungement to "convictions in Utah state courts." Utah Code § 7-40a-101(4)(a)(ii). New Jersey explicitly considers out-of-state records for petition-based expungement. *See* N.J. Stat. § 2C:52-3; N.J. Stat. § 2C:52-2. It does not for automatic expungement. N.J. Stat. § 2C:52-5.3; 5.4. New York, a state which enacted automatic expungement in 2023, explicitly considers out of state convictions in its statute, but only when "appropriate federal authorities grant access to records necessary to query to effectuate the purposes of this subparagraph in an automated manner" – thereby acknowledging the administrative roadblocks presented by such a broad inquiry. S.B. 7551, Reg. Sess. (N.Y. 2023); Crim Proc. § 160.57(1)(b)(viii); Crim Proc. § 160.57(1)(b)(ix).

[55] The Fiscal Note accompanying the Clean Slate Act does not contemplate searching or keeping of out-of-state records, nor does it provide funds commensurate with the associated effort. Fiscal Note, S. 111, 151st Gen. Assemb. (Del. April 16, 2021).

[56] *See* §§ 4372(g), (h) (permitting expungement when the prior or subsequent conviction is: "[u]nderage possession or consumption of alcohol under § 904(e) or (f) of Title 4," "[p]ossession of a personal use quantity of marijuana under § 4764 of Title 16," "[p]ossession of drug paraphernalia under § 4771 of Title 16," or "a Title 21 offense").

[57] *See, e.g.*, 11 *Del. C.* § 4372(f) (listing Delaware crimes that cannot be expunged); 11 *Del. C.* § 4372(g) (listing Delaware crimes that do not bar eligibility for expungement); 11 *Del. C.* § 4373(b) (listing Delaware crimes that cannot be expunged); 11 *Del. C.* § 4374(b) (listing Delaware crimes that bar eligibility for expungement).

exclusion, the individual would not be eligible to petition for Delaware expungement or benefit from the automatic expungement process. And two persons with similar criminal records might have different outcomes simply due to the inability of the State to uncover the criminal record of one.[58]

Finally, the State argues that "[p]recluding expungement under the Statutes where the applicants have additional out-of-state convictions is consistent with the intent of limiting expungements to a single case."[59] In other words, the Expungement Statutes were not intended to give a person the benefit of expunging a Delaware conviction when only one of the person's multiple convictions occurred in Delaware.

This concern, however, can be addressed within the existing framework. A petitioner in this circumstance would still have their out-of-state record criminal record. And for discretionary expungement, the petitioner's extraterritorial criminality remains "fair game" for the merits of their discretionary appeal. The petitioner must demonstrate manifest injustice by a preponderance of the evidence.[60]

---

[58] We acknowledge the Dissent's point that either reading of the Expungement Statutes might result in different treatment of identical convictions, turning on the jurisdiction where the conviction happened. But adopting the Dissent's reading of the statute results in two inequalities, between those who have prior or subsequent convictions in Delaware and other jurisdictions, and also those who have prior or subsequent convictions in other jurisdictions – with the second inconsistency turning on the accuracy and scope of the State's out-of-state search. Under the petitioners' reading, there is only a single inequality – between those who have prior or subsequent convictions in Delaware and other jurisdictions.

[59] Answering Br. at 13–14.

[60] § 4374(f).

Our Colleagues in Dissent are disquieted by this outcome, and argue that a "partial" expungement does not adhere to the statement of purpose in Section 4371: "the removal of the 'hindrance to a person's present and future ability to obtain employment, housing, education, or credit[]' that a criminal history presents."[61] But the Expungement Statutes themselves do not contemplate complete elimination of a petitioner's criminal history. The General Assembly recognized that some prior and subsequent arrests or convictions might remain part of a Delaware criminal record, but they should not be a barrier to some relief.[62]

## IV.

The judgment of the Superior Court is reversed, and the cases are remanded for further proceedings consistent with this opinion.

---

[61] Dissent at 5 (quoting 11 *Del. C.* § 4371).

[62] *See, e.g.*, 11 *Del. C.* §§ 4372(b)(6), (f)(1) (permitting expungement of an arrest record where no charges were filed within one year of an arrest, despite the presence of pending criminal charges which would otherwise block eligibility for all other categories of expungement); § 4372(h) (permitting expungement of a case despite another case containing a prior or subsequent conviction of a serious driving offense under Title 21, and also other criminal charges); § 4373(a)(1) (permitting expungement, despite the existence of a prior or subsequent conviction, when "[t]he person was arrested or charged with the commission of 1 or more crimes and the case is terminated in favor of the accused," "[t]he person was convicted of 1 or more violations relating to the same case and 3 years have passed since the date of conviction," "[t]he person was convicted of possession of marijuana under § 4764 of Title 16 or possession of drug paraphernalia under § 4771 of Title 16, or both in the same case," or "[t]he person was convicted of underage possession or consumption of alcohol under § 904(e) or (f) of Title 4.").

**TRAYNOR, J. dissenting, joined by VALIHURA, J.:**

I disagree with my colleagues in the Majority for three reasons. First, the relevant sections of the Expungement Statutes that limit eligibility for expungement to persons who have no prior or subsequent convictions are unambiguous and do not require disqualifying prior or subsequent convictions to have been entered in a court of this State. That the statute by its terms applies to the expungement of records in "all criminal cases brought and convictions entered in this State" does not speak to the locus of disqualifying prior or subsequent convictions. Second, the Majority's interpretation would favor a serious multistate repeat offender over a Delawarean whose offenses are confined to this State. Last—but certainly not least—granting expungements to persons with prior or subsequent convictions in other jurisdictions does not serve the expungement statute's stated purpose—the removal of the "hindrance to a person's present and future ability to obtain, employment, housing, education, or credit[]" caused by "a criminal history."[63] When the arrest or conviction record of a person with a prior or subsequent out-of-state conviction is expunged, the out-of-state record, and hence the "hindrance," remains. In this way, the explicit statutory purpose is frustrated.

The Majority acknowledges that the phrase "prior or subsequent convictions" in the Expungement Statutes' eligibility criteria does not contain a jurisdictional

---

[63] 11 *Del. C.* § 4371.

qualifier; it does not say "prior or subsequent convictions in this State." Even so, the Majority concludes that, if the statute is read within its proper context, the added gloss is justified. I think that the opposite is the case.

The Majority's review of the context relies on, among other things, §4372(a)'s statement that "[t]his subchapter applies to all criminal cases brought and *convictions entered in a court in this State*."[64] The Majority then observes that "[o]ut-of-state convictions are not mentioned in the Expungement Statutes" and concludes that, therefore, "'prior or subsequent convictions' mean what Section 4372 says—the statutory expungement scheme applies to Delaware prior and subsequent convictions, and not convictions from other states."[65]

The Majority suggests that, by reading § 4372 this way, I am adopting an interpretation that the State advocated in its answering brief but not in the proceedings below. That was not my intention. Instead, my reading was informed by, among other things, a comparison of § 4372 before it was amended in 2019 with the amended version. The pre-amendment version provided for the expungement of police records and court records relating to criminal charges that were terminated in favor of the accused; it stated:

> If a person is charged with the commission of a crime or crimes and the case is terminated in favor of the accused, the person may request the

---

[64] 11 *Del. C.* § 4372 (quoted and emphasis added in Majority Opinion at 12).
[65] Majority Opinion at 11–12.

21

expungement of the police records and the court records relating to the case pursuant to the provisions of this subchapter.[66]

In the 2019 amendment, this language was stricken in its entirety and replaced with the simple statement that "[t]his subchapter applies to all criminal cases brought and convictions entered in a court of this State." Though simple, this marked a sea change in our expungement regime from one that allowed for the expungement of a limited category of arrest records to one that, for the first time, allowed for the expungement of convictions. In other words, the substantive change to § 4372 was that, whereas before the amendment it applied only to police records and court records relating to cases favorably terminated in an accused's favor, it is now to *apply* to "all criminal cases brought and convictions entered in a court in this State." Before the statute applied to arrest records, but now it is to apply—that is, one might seek expungement of—conviction records.

It is fair to say that the State did not frame their argument in these terms in the Superior Court or, for that matter, in this Court. But that should be immaterial to our interpretation of the statute. Our job is to "read statutes by giving [their] language its reasonable and suitable meaning . . . ."[67] whether or not that aligns with the meaning the parties ascribe to it. Here, with all respect for the contrary view of

---

[66] *See* Del. S. Substitute 1 for Del. S.B. 37 with Del. S. Amend. 1, 150th Gen. Assemb. (Del. 2019), at 1 (Ex. B to Opening Br. of Osgood).

[67] *Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336, 343 (Del. 2012).

22

my Colleagues in the Majority, I think that the most reasonable and sensible reading of the statute is as I have maintained above.

I concede that, if the Majority's interpretation of § 4372(a)'s import is the right one—if it limits disqualifying prior or subsequent convictions to those entered in Delaware—nothing is left to debate: the Majority is correct, and I am not. But I think that the Majority's interpretation of § 4372(a) is not the right one. Instead, I understand subsection (a) as delineating the scope of the Expungement Statutes as a whole and not as defining terms used within them. Indeed, § 4372 itself contains a host of definitions, including a definition of "[c]onviciton" that is not geographically limited.[68] Seen in this light, I think that the better reading of § 4372(a) is that "[t]his subchapter applies to [the expungement of records in] all criminal cases brought and convictions entered in a court in this State."

I concede that treating out-of-state convictions as disqualifying could, under certain circumstances and as the Majority notes, yield results that the General Assembly in all likelihood did not intend. For instance, a petitioner with a prior or subsequent conviction for possessing a personal-use quantity of marijuana in Delaware might still be eligible for an expungement, while a petitioner who had a

---

[68] 11 *Del. C.*§ 4372 (c)(2) a. states that "Conviction means as defined under § 222 of this title." 11 *Del. C.* § 222 defines "conviction" as "a verdict of guilty by the trier of fact, whether judge or jury, or a plea of guilty or a plea of nolo contendere accepted by the court."

23

similar out-of-state conviction would not be.[69]  But this flaw in the statute does not, in my view, justify the Majority's extratextual interpretation that itself opens the door to odd—and likely unintended—results.  Under the Majority's interpretation, for example, a petitioner who has numerous recent felony convictions in a neighboring state would maintain expungement eligibility, while a petitioner who had but one prior misdemeanor conviction in the distant past in Delaware would be disqualified.

My interpretation, moreover, pays heed to the explicit statement of policy set forth in § 4371.  That section identifies the objective that expungements are designed to achieve:  the removal of the "hindrance to a person's present and future ability to obtain employment, housing, education, or credit[]" that a criminal history presents.  An expungement in Delaware that leaves the petitioner with a criminal record in other states does not accomplish this objective.  A review of appellant Qaiymah's history illustrates this point.  Despite his conviction for possession of unstamped cigarettes in Pennsylvania in 2018 and his conviction two years later in Maryland for transporting unstamped cigarettes, he sought mandatory expungement of his 2015 conviction in Delaware for possession of unstamped cigarettes.  According to

---

[69] *See* 11 *Del. C.* § 4372(g) ("A prior or subsequent conviction does not operate as a bar to eligibility for discretionary or mandatory expungement under this subchapter if the conviction is under any of the following:  (1) Underage possession or consumption of alcohol under § 904(e) or (f) of Title 4.  (2) Possession of a personal use quantity of marijuana under § 4764 of Title 16. (3) Possession of drug paraphernalia under § 4771 of Title 16.").

24

the Majority, SBI and the Superior Court must disregard Qaiymah's 2018 and 2020 convictions in nearby states for criminal conduct that was virtually identical to the conduct that led to his conviction in this State in 2015. But by applying the statute in that way, the court will have accomplished nothing by granting Qaiymah's expungement petition; his subsequent Pennsylvania and Maryland convictions will continue to pose the very same hindrance to his future prosperity as did his earlier conviction in Delaware. This outcome will be in tension, if not starkly at odds, with the Expungement Statutes' stated purpose.

Finally, I am not persuaded that the Majority's concern about the accuracy of out-of-state criminal records should be weighed in favor of its interpretation of the meaning of "prior or subsequent convictions." Our courts routinely consider conviction records from other states when considering, among other things, a person's eligibility to possess a weapon,[70] determining whether a person is a habitual offender[71] or a subsequent DUI offender,[72] and enhancing a sentence.[73] I see no reason why they could not, and should not, do the same in the expungement-petition context. The process set forth in § 4374 governing the review of discretionary

---

[70] 11 *Del. C.* § 1448 (a)(1).
[71] 11 *Del. C.* § 4214(a)–(d).
[72] 21 *Del. C.* § 4177B(e)(1).
[73] 11 *Del. C.* § 1448 (e)(1)(c), (e)(3); *see also Valentine v. State*, 207 A.3d 166, 2019 WL 1178765 (Del. Mar. 12, 2019) (TABLE).

25

expungement petitions should be adequate to address any concerns about the accuracy of an out-of-state record.

In closing, I note that, as the Majority and this dissent acknowledge, the Expungement Statutes can lead to disparate outcomes for similarly situated expungement petitioners regardless of whether disqualifying prior and subsequent convictions are limited to convictions entered in a Delaware court.[74] As a consequence, ascertaining whether the General Assembly intended to give a green light to expungement petitions filed by petitioners with prior or subsequent out-of-state convictions has been challenging. The Majority has offered a coherent reason for reaching its conclusion that the legislature intended the expunging authority—be it SBI or a court—to limit disqualifying convictions to those occurring within our borders. For the reasons set forth above and by contrast, I read the Expungement Statutes as restricting the availability of the expungement remedy to those whose conduct, both before and after the conviction for which expungement is sought, has been crime free. I therefore respectfully dissent.

---

[74] *See,* e.g., Majority Opinion at 18, n.58; Dissent at 4–5.